973 P.2d 1049 (1999)
137 Wash.2d 533
STATE of Washington, Petitioner,
v.
Keith Bennett STUDD, Respondent.
State of Washington, Respondent,
v.
Lee Ernest Cook, Jr., Petitioner.
State of Washington, Respondent,
v.
Daun Leon Bennett, Petitioner.
State of Washington, Respondent,
v.
Raymond D. McLoyd, Petitioner.
State of Washington, Petitioner,
v.
William Henry Ameline, Respondent.
State of Washington, Petitioner,
v.
Vincent Lavelle Fields, Respondent.
Nos. 65943-5, 65948-6, 65956-7, 65995-8, 65999-1, 66108-1.
Supreme Court of Washington, En Banc.
Argued June 16, 1998.
Decided April 1, 1999.
*1051 George Ahrend, Spokane, for Respondent Studd.
Eric Broman, Eric Nielsen, Seattle, for Petitioner Cook.
Kelly Curtin, Seattle, for Petitioner Bennett.
Kimberly Gordon, Seattle, for Petitioner McLoyd.
Kimberly Gordon, Shannon B. Marsh, Stella S. Buder, Seattle, for Respondent Fields.
Clayton Dickinson, Fircrest, for Respondent Ameline.
Honorable Jim Sweetser, Spokane County Prosecutor, Kevin Korsmo, Deputy, Spokane, for Petitioner State.
John Ladenburg, Pierce County Prosecutor, Barbara Corey-Boulet, Deputy, Tacoma, Jim Krider, Snohomish County Prosecutor, Breck Marsh, S. Aaron Fine, Deputies, Everett, Norm Maleng, King County Prosecutor, Brian McDonald, Deputy, Seattle, for Respondent State.
*1050 ALEXANDER, J.
The principal question that is presented by these six consolidated appeals is the same: Whether a jury instruction that erroneously states the law of self-defense furnishes a basis for a new trial when the erroneous instruction is requested by the defendant. The defendants, all six of whom were convicted at a jury trial, each argue that it was not made clear to jurors that a defendant need not be in actual danger of imminent harm in order to act in self-defense against a perceived aggressor, provided the defendant reasonably believes himself to be in danger. We conclude that while it is error for a trial court to fail to make this standard clear in a jury instruction, such error does not furnish a basis for a new trial when the defendant invites the error by requesting the instruction. We, therefore, affirm the Court of Appeals in two cases where it upheld the conviction, recognizing that the error had been invited. We also affirm the Court of Appeals in another case where it held that requesting the erroneous instruction did not constitute ineffective assistance of counsel. We further affirm the Court of Appeals in two cases where it reversed the defendant's conviction due to the fact that the defendant's efforts to correct the error complained of were rebuffed by the trial court, and we reverse it, in a case where it failed to recognize that the error was invited.

FACTS

State v. Studd
Keith Studd killed David Castle with a single stab wound from a knife during a fight. Studd was thereafter charged in Spokane County Superior Court with second degree felony murder. At trial, Studd argued that he had stabbed Castle in self-defense because he feared that Castle was reaching for a weapon. Studd proposed two jury instructions on self-defense, which were given almost completely unchanged by the trial court. One of these instructions, which was taken verbatim from Washington Pattern Jury Instructions: Criminal § 16.02 (1994) (WPIC), read as follows:
It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.
Homicide is justifiable when committed in the lawful defense of the slayer when:
(1) The slayer reasonably believed that the person slain intended to inflict death or great personal injury;
(2) There was imminent danger of such harm being accomplished; and
(3) The slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time of and prior to the incident.
The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it *1052 will be your duty to return a verdict of not guilty.
Clerk's Papers (CP) at 130 (emphasis added). The other instruction was taken verbatim from WPIC 16.07 and it stated as follows:
A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger.
Actual danger is not necessary for a homicide to be justifiable.
CP at 132 (emphasis added).
Studd was convicted of second degree felony murder, and appealed. Following Studd's conviction this court concluded in another case that a jury instruction similar to WPIC 16.02 was erroneous in that it did not make clear to the jury that, in order to sustain the defense of self-defense the defendant must have a subjectively reasonable belief of imminent harm, as determined from the surrounding facts and circumstances. State v. LeFaber, 128 Wash.2d 896, 913 P.2d 369 (1996). Citing LeFaber, the Court of Appeals, Division Three, reversed Studd's conviction, holding that the self-defense instructions set forth above were in irreconcilable conflict and did not, therefore, accurately state the law of self-defense. State v. Studd, 87 Wash.App. 385, 389, 942 P.2d 985 (1997), review granted, 134 Wash.2d 1010, 954 P.2d 276 (1998). The State sought review, arguing that under the "invited error" doctrine Studd cannot complain about an instruction that he proposed. We granted review. In doing so, we consolidated this case with the five that are discussed hereafter.

State v. Cook
Lee Cook shot and killed Troy Robinson. Cook had been robbed at gunpoint by Robinson during the course of a drug transaction, and Cook argued that his subsequent shooting of Robinson was in self-defense. Cook was thereafter charged in Pierce County Superior Court with first degree murder and unlawful possession of a short firearm.[1] Cook proposed, and the trial court gave, self-defense instructions nearly identical to the two given in Studd above. Cook was convicted of second degree murder and appealed. The Court of Appeals, Division Two, affirmed Cook's conviction in an unpublished opinion. State v. Cook, No. 19020-6-II, slip op., 1997 WL 404059 (Wash.Ct.App. July 18, 1997). It held that the two self-defense instructions are "complementary, not contradictory" and that "read together, these instructions make the relevant legal standard manifestly apparent to the average juror." Cook, slip op. at 5. The Court of Appeals further held that Cook had also "invited the trial court to give the flawed instruction." Cook, slip op. at 6. Cook sought review, which we granted.

State v. Bennett
Daun Bennett stabbed his former girlfriend, JoLayne Boston, 14 times and then shot her with her own gun. State v. Bennett, 87 Wash.App. 73, 75-76, 940 P.2d 299 (1997), review granted by State v. Studd, 134 Wash.2d 1010, 954 P.2d 276 (1998). Boston survived the attack. Bennett was thereafter charged in Snohomish County Superior Court with first degree attempted murder while armed with a deadly weapon. Bennett contended that he had acted in self-defense in an altercation with Boston during which he had tried to take Boston's gun away from her. As in Studd and Cook, Bennett requested instructions identical to WPIC 16.02 and 16.07 and the trial court acceded to his request. Bennett was convicted as charged and appealed. The Court of Appeals, Division One, affirmed, holding that the invited error doctrine did not preclude the defendant from raising the instructional error claim, because Bennett raised it under the guise of ineffective assistance of counsel due to his trial counsel having proposed an erroneous self-defense instruction. It held, however, that Bennett had received effective counsel because the instructions, read as a whole, accurately stated the law on self-defense. Bennett sought review, and we granted it.

State v. McLoyd
Raymond McLoyd shot and killed Charles Blatchford. McLoyd claimed that he had *1053 acted in self-defense in response to Blatchford's efforts to "car jack" his automobile. McLoyd was thereafter charged in King County Superior Court with first degree murder and second degree felony murder while armed with a deadly weapon.[2] Like the defendants in the preceding three cases, McLoyd requested, and the trial court provided the jury, instructions modeled on WPIC 16.02 and WPIC 16.07. McLoyd was convicted of committing second degree felony murder while armed with a deadly weapon. He appealed to the Court of Appeals, Division One, which affirmed his conviction. State v. McLoyd, 87 Wash.App. 66, 939 P.2d 1255 (1997), review granted by State v. Studd, 134 Wash.2d 1010, 954 P.2d 276 (1998). It held that although McLoyd had invited the error complained of by proposing an instruction based on WPIC 16.02, the invited error doctrine did not bar his challenge to the instruction because McLoyd had also proposed a clarifying instruction. However, the Court of Appeals concluded that when read together the instruction based on WPIC 16.07 cured any ambiguity that would arise from reading the instruction based on WPIC 16.02 alone. We granted discretionary review.

State v. Ameline
William Ameline killed Barbara Hunsaker by beating her with an iron pipe. Ameline argued that he had acted in self-defense, asserting that Hunsaker had demanded money from him and was threatening him with a knife. Ameline admitted that he buried Hunsaker's body in a remote area after attempting to make the killing look like the work of the "Green River Killer." Ameline was thereafter charged in Pierce County Superior Court with second degree murder. In response to Ameline's request the trial court gave the jury the following self-defense instruction:
It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.
Homicide is justifiable when committed in the lawful defense of the slayer when the slayer reasonably believes that the person slain intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished.
The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time of and prior to the incident.
The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable.
CP at 72. Ameline argued that it needed to be made clearer to the jury that "behaving as a reasonably prudent person" he was entitled to defend himself against the apparent threat of injury, even if he was mistaken about the threat. Verbatim Report of Proceedings (VRP) at 493. Consistent with that contention, Ameline requested the following jury instruction:
If a person acting as a reasonably prudent person, mistakenly believes himself to be in danger of injury or of an offense being committed against him or his property, he has the right to defend himself by the use of lawful force against that apparent injury or offense even if he is not actually in such danger.
CP at 48. The trial court refused to give this instruction. Ameline was convicted of second degree murder and appealed. After first affirming the conviction in an unpublished opinion, the Court of Appeals, Division Two, upon reconsideration, reversed and remanded in an unpublished opinion. State v. Ameline, No. 17339-5-II, 1997 WL 417958 (Wash.Ct.App. July 25, 1997). The Court of Appeals held that because the trial court had rejected Ameline's efforts to clarify the law of self-defense in the jury instructions, he had not invited the instructional error. The State sought review in this court, which we granted.

State v. Fields
Vincent Fields stabbed and killed Scott Holm with a kitchen knife. Fields testified that he had acted in self-defense, stabbing Holm only after Holm pulled out a gun during *1054 an argument over stereo speakers that Fields had been in the process of buying from Holm. Fields was thereafter tried in King County Superior Court on a charge of first degree murder and other charges that are not before this court.
Fields requested a jury instruction substantially similar to the one disapproved of in LeFaber. The trial court gave WPIC 16.02 verbatim instead. Fields also proposed an instruction that was almost identical to WPIC 16.07 in order to clarify the law on self-defense for jurors. The State objected and the trial court refused to give the instruction, which read:
A person is entitled to act on appearances in defending himself, herself, or another, if that person in good faith and on reasonable grounds believe [sic] that he, she, or another is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger.
Actual danger is not necessary for a homicide to be justifiable.
CP at 29. Fields had argued in support of this instruction that "they might say he was mistaken in his belief that he was in danger, that he wasn't really in any danger, and therefore he overreacted. This instruction is aimed directly at that situation." VRP at 823. Fields was convicted of second degree murder and appealed.[3]
The Court of Appeals, Division One, reversed and remanded. State v. Fields, 87 Wash.App. 57, 940 P.2d 665 (1997), review granted by State v. Studd, 134 Wash.2d 1010, 954 P.2d 276 (1998). It held that the instruction given by the trial court allowed the jury to interpret the law as requiring "an imminent danger of actual harm in order to accept Fields' self-defense claim." Fields, 87 Wash.App. at 61, 940 P.2d 665 (emphasis added). The Court of Appeals also concluded that although Fields had proposed essentially the same instruction, his proposal to also give WPIC 16.07 "would have cured the ambiguity by clarifying that actual danger is not an element of self-defense." Fields, 87 Wash.App. at 63, 940 P.2d 665. It determined, therefore, that Fields did not invite error. The State sought review in this court, which we granted.

ANALYSIS
In Washington, "[a] jury may find self-defense on the basis of the defendant's subjective, reasonable belief of imminent harm from the victim." LeFaber, 128 Wash.2d at 899, 913 P.2d 369 (emphasis added) (citing State v. Janes, 121 Wash.2d 220, 238-39, 850 P.2d 495, 22 A.L.R.5th 921 (1993)). Given this subjective component, there need be no finding of actual imminent harm. See LeFaber, 128 Wash.2d at 899, 913 P.2d 369 (citing State v. Theroff, 95 Wash.2d 385, 390, 622 P.2d 1240 (1980); State v. Miller, 141 Wash. 104, 105, 250 P. 645 (1926)).
The question shared by each of these six cases is whether a jury instruction that was clearly erroneous in its statement of self-defense law should alone be grounds for a new trial. The instruction complained of by Studd, Cook, McLoyd, Bennett and Fields is based on WPIC 16.02. In LeFaber we reversed a conviction due to the erroneous impression of self-defense law created by an instruction that we wrote was similar to, but "lacking the glaring structural difficulties of," WPIC 16.02. LeFaber, 128 Wash.2d at 902, 913 P.2d 369. Our holding was based upon the fact that "[a] jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial." LeFaber, 128 Wash.2d at 900, 913 P.2d 369 (citing State v. McCullum, 98 Wash.2d 484, 487-88, 656 P.2d 1064 (1983); State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977)). Although WPIC 16.02 was not challenged in LeFaber, we noted in dicta that it was actually a more erroneous statement of self-defense law than the instruction at issue there. "The structure of WPIC 16.02 could mislead a jury because the imminent danger requirement is set off by a separate number and thus lacking connection to the reasonable belief qualifier." *1055 LeFaber, 128 Wash.2d at 902, 913 P.2d 369 (citing State v. LeFaber, 77 Wash.App. 766, 771, 893 P.2d 1140 (1995), rev'd on other grounds by, 128 Wash.2d 896, 913 P.2d 369 (1996)). We now make explicit what was implicit in that commentary: WPIC 16.02 is not the "manifestly clear instruction" that jurors require. LeFaber, 128 Wash.2d at 902, 913 P.2d 369 (citing State v. Allery, 101 Wash.2d 591, 595, 682 P.2d 312 (1984)). Moreover, the instruction complained of by Ameline contains the same offending language as the instruction invalidated in LeFaber.
Unhappily for Studd, Cook, McLoyd and Bennett, however, the fact that a clearly erroneous jury instruction was given is not the end of the story. For the first three of these defendants, that is so because we have also held that "[a] party may not request an instruction and later complain on appeal that the requested instruction was given." State v. Henderson, 114 Wash.2d 867, 870, 792 P.2d 514 (1990) (emphasis omitted) (quoting State v. Boyer, 91 Wash.2d 342, 345, 588 P.2d 1151 (1979)). Henderson also involved erroneous WPIC instructions proposed by a defendant and later complained of, and we held there that "even if error was committed, of whatever kind, it was at the defendant's invitation and he is therefore precluded from claiming on appeal that it is reversible error." Henderson, 114 Wash.2d at 870, 792 P.2d 514 (emphasis added). Henderson is directly on point. There can be no doubt that this is a strict rule, but we have rejected the opportunity to adopt a more flexible approach. See Henderson, 114 Wash.2d at 872, 792 P.2d 514 (dissent argues that "the doctrine should be applied prudently, with respect to the facts of each case," but acknowledges that "[t]his court's history of applying the doctrine of invited error with little analysis or discussion implies that the doctrine is strictly applied regardless of circumstances.") (Utter, J., dissenting) (citations omitted).
The dissent seeks to avoid confronting the invited error doctrine by assigning significance to the fact that "in LeFaber this court reviewed the erroneous self-defense instruction without attaching any importance to the question of whether the defendant had proposed the incorrect jury instruction." Dissenting op. at 1052. This argument overlooks the fact that the invited error issue was never reached in LeFaber because there the record was "somewhat unclear as to whether defense counsel merely failed to except to the giving of the instruction, or whether he affirmatively assented to the instruction or proposed one with similar language." LeFaber, 128 Wash.2d at 904 n. 1, 913 P.2d 369 (Alexander, J., dissenting). Because we are not in the business of inventing unbriefed arguments for parties sua sponte, there certainly was no significance in our not doing so in LeFaber.
Here, the record is quite clear with regard to defendants Studd, Cook, and McLoyd that these defendants requested instructions modeled after WPIC 16.02. Consequently, the doctrine of invited error prevents them from now complaining about the trial court acceding to their request to give a certain instruction. The Court of Appeals in McLoyd wrongly concluded otherwise,[4] although it went on to affirm McLoyd's conviction anyway. Although Justice Madsen indicates in her concurrence that she "cannot conceive" of how the invited error doctrine applies to defendants requesting jury instructions modeled on WPIC instructions that have met "with this court's general approval,"[5] we are satisfied that there is authority for such a result. Indeed, we have previously refused to address the retroactivity of a United States Supreme Court opinion where a legal presumption declared unconstitutional had been used, four years earlier, in a jury instruction requested by a criminal defendant. See In re Personal Restraint of Griffith, 102 Wash.2d 100, 101-02, 683 P.2d 194 (1984) (citing Sandstrom v. Montana, 442 *1056 U.S. 510, 512, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). We reached this conclusion despite the fact that "the unconstitutional instruction was standard in this state, In re Hagler, 97 Wash.2d 818, 819, 650 P.2d 1103 (1982), and had been expressly approved by this court." Griffith, 102 Wash.2d at 104, 683 P.2d 194 (Utter, J., dissenting) (emphasis added) (citing State v. Mays, 65 Wash.2d 58, 66, 395 P.2d 758 (1964)). We will not overrule such binding precedent sub silentio.
The dissent next attempts to distinguish our long-standing invited error doctrine on the strength of two opinions from the Court of Appeals. See Dissenting op. at 1061. One of those opinions, State v. Studd, we are reversing today. As for the other opinion, State v. Young, 48 Wash.App. 406, 739 P.2d 1170 (1987), the error there did "not arise from the giving of the instruction, but the refusal to clarify it" despite a request to do so. Young, 48 Wash.App. at 415, 739 P.2d 1170 (emphasis added). The error, therefore, was not truly invited. Young, 48 Wash. App. at 415, 739 P.2d 1170. Finally, with no Washington law to support it, the dissent is reduced to making policy arguments, based upon language from cases in other jurisdictions, for abandoning our invited error doctrine. We decline the invitation.
In light of Griffith, where the error was invited we need not address the issue, as the Court of Appeals in McLoyd did, of whether WPIC 16.07 cures the defects in WPIC 16.02 in conformity with LeFaber. See Griffith, 102 Wash.2d at 102, 683 P.2d 194. We have, however, recently held that where "presumptively prejudicial" ambiguity was created by giving an instruction based upon a then-existing version of WPIC 16.02 it was cured by providing an instruction based upon the then-existing WPIC 16.07. State v. Hutchinson, 135 Wash.2d 863, 884, 959 P.2d 1061 (1998). This was because "[t]he jury is presumed to read the court's instructions as a whole, in light of all other instructions. The jury is also to presume each instruction has meaning." Hutchinson, 135 Wash.2d at 885, 959 P.2d 1061 (citing McLoyd, 87 Wash. App. at 71, 939 P.2d 1255) (emphasis added). For the reasons stated above, the Court of Appeals is reversed in Studd, and Studd's and McLoyd's convictions are affirmed.
Although Cook invited error by requesting an instruction based on WPIC 16.02, he has also raised two other issues that merit our attention. He argues that the trial court erred in not providing a "`no duty to retreat' " instruction, based upon WPIC 16.08, that he had requested. Pet. for Review at 11. We have previously held that "[n]o duty to retreat exists when one is feloniously assaulted in a place where [one] has a right to be." Allery, 101 Wash.2d at 598, 682 P.2d 312 (citing State v. Hiatt, 187 Wash. 226, 60 P.2d 71 (1936); State v. Lewis, 6 Wash.App. 38, 491 P.2d 1062 (1971)). A defendant is entitled to a jury instruction to this effect if sufficient evidence in the record supports it. See Allery, 101 Wash.2d at 598, 682 P.2d 312 (citing State v. King, 92 Wash.2d 541, 599 P.2d 522 (1979)). However, the Court of Appeals in Cook found that retreat was simply not an issue: "The State asserted that Cook shot Robinson after any subjective risk of imminent danger had passed. The defense theorized that Robinson still held Cook at gunpoint at the time of the shooting. Neither scenario raises an inference that Cook could have avoided the use of force through a timely retreat." Cook, slip op. at 8 (emphasis added). Cook's response is that the deputy prosecutor put the opportunity for retreat into issue during her closing argument. He, for example, notes that she said of Cook that "[h]e certainly wasn't going to run away from trouble. He was going to finish it." VRP at 1174. Cook takes these remarks completely out of context. The deputy prosecutor, in our view, was merely trying to establish premeditation, the prior example being used to show Cook's mental state in bringing the gun to a drug deal in the first place. We do not believe that the deputy prosecutor was suggesting that Cook could have run away during the ensuing altercation with the victim.
Even less persuasive is Cook's argument that by giving the jury instruction 22, a non-WPIC instruction, over defense objections, the trial court "improperly emphasized the state's theory of the case" that Cook killed Robinson for revenge. Instruction 22 read as follows: "Justifiable homicide committed *1057 in the defense of the slayer, or `self-defense,' is an act of necessity. The right of self-defense does not permit action done in retaliation or revenge." CP at 105. Cook admits that this language comports with our reasoning in Janes, where we wrote that
[t]he objective aspect ... keeps self-defense firmly rooted in ... necessity. No matter how sound the justification, revenge can never serve as an excuse for murder. "`[T]he right of self-defense does not imply the right of attack in the first instance or permit action done in retaliation or revenge.'"
Janes, 121 Wash.2d at 240, 850 P.2d 495 (quoting People v. Dillon, 24 Ill.2d 122, 125, 180 N.E.2d 503 (1962)). Cook argues, however, that this jury instruction has never been approvedwithout citing any authority for what "approval" is necessary. Pet. for Review at 14. We find that the instruction correctly stated the law, and did not unfairly emphasize the State's theory of the case or, in any way, comment upon the evidence. Cook's conviction is affirmed.
With regard to Bennett, the Court of Appeals cited a decision of this court in holding that "[t]he invited error doctrine generally forecloses review of an instructional error.... But invited error does not bar review of a claim of ineffective assistance of counsel based on such an instruction." Bennett, 87 Wash.App. at 76, 940 P.2d 299 (citing Henderson, 114 Wash.2d at 870, 792 P.2d 514; State v. Gentry, 125 Wash.2d 570, 646, 888 P.2d 1105 (1995)). In Gentry we held that although we would "adhere to our normal use of the invited error doctrine" in capital cases, we would review challenges to invited jury instructions through ineffective assistance of counsel claims. See Gentry, 125 Wash.2d at 646, 888 P.2d 1105; see also State v. Doogan, 82 Wash.App. 185, 188, 917 P.2d 155 (1996) (applying this rule where defendant was charged with second degree promotion of prostitution).
By framing his argument this way, Bennett avoids one thicket only to become entangled in another. We strongly presume that counsel's representation was effective. See State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). A two-prong test must be met to demonstrate ineffective assistance of counsel. See, e.g., State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (applying test from Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)). Bennett must first show that his "counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances." McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251 (citing Thomas, 109 Wash.2d at 225-26, 743 P.2d 816). However, "[d]eficient performance is not shown by matters that go to trial strategy or tactics." State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996) (emphasis added) (citing State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994)). LeFaber had not been decided at the time of Bennett's trial, so his counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned WPIC 16.02. Thus we do not even reach the second part of the test, where Bennett would have had to also prove that "defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." McFarland, 127 Wash.2d at 335, 899 P.2d 1251 (citing Thomas, 109 Wash.2d at 225-26, 743 P.2d 816). Bennett's conviction is affirmed.
The jury instructions complained of by Ameline and Fields were given in circumstances different from those involving Studd, McLoyd, Cook and Bennett, and result in simple applications of our holding in LeFaber. In Ameline's case the jury was charged with an instruction containing the same language that we found to be unconstitutional in LeFaber. The instruction in both cases stated that homicide is justifiable when the slayer "reasonably ... intends to inflict death or great personal injury and there is imminent danger of such harm being accomplished." Ameline CP at 72; LeFaber, 128 Wash.2d at 898-99, 913 P.2d 369 (emphasis added). In LeFaber we held that this language permits "an erroneous interpretation of the law as requiring actual danger." LeFaber, *1058 128 Wash.2d at 902, 913 P.2d 369. The fact that Ameline proposed much the same instruction is no bar to his challenge to it, for he also proposed a curative instruction that was not given and, thus, did not invite the error that he complains of now. Therefore, LeFaber controls here because "constitutional rulings in criminal cases apply retroactively to all cases not yet finally decided on direct review." State v. Campbell, 125 Wash.2d 797, 800, 888 P.2d 1185 (1995). We affirm the Court of Appeals' decision reversing Ameline's conviction and remanding for a new trial.
The trial court in Fields' case gave WPIC 16.02 verbatim to the jury, consistent with Fields' request. Fields had, however, additionally requested an instruction identical to WPIC 16.07 as a curative instruction, and the trial court rejected that request. Thus the ambiguous language of WPIC 16.02 was unmitigated, and "the jury might have understood a self-defense claim to require a showing that actual harm was imminent." Fields, 87 Wash.App. at 65, 940 P.2d 665. Because "the fatal ambiguity resulted from the State's successful objection to the clarifying instruction that Fields proposed," Fields cannot be said to have invited the error he complains of and LeFaber applies. Fields, 87 Wash.App. at 65, 940 P.2d 665. Accordingly, the Court of Appeals properly reversed his conviction and remanded for a new trial. We affirm the Court of Appeals.

CONCLUSION
In conclusion, we affirm the decisions of the Court of Appeals in Cook, Bennett, and McLoyd, which upheld convictions, and also affirm the decisions in Ameline and Fields wherein the convictions were reversed and new trials were ordered. Finally, we reverse the Court of Appeals in Studd,thus restoring Studd's conviction.
GUY, C.J., and DURHAM, SMITH, JOHNSON, TALMADGE, JJ., and DOLLIVER, J.P.T., concur.
MADSEN, J. (concurring).
The invited error doctrine should not be applied to preclude claimed error resulting from a pattern jury instruction proposed by the defense. The pattern jury instructions are the result of considerable work of the Washington Supreme Court Committee on Jury Instructions which was created in 1963 by order of this court. See 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL Preface, at VII (3d ed. 1989) (WPI). In remarks addressing the third edition of the civil Washington pattern jury instructions, the members of this court observed that the pattern instructions reduce
the time and effort which must be expended on the preparation of jury instructions in the day to day trial of cases. Furthermore, these pattern instructions have greatly enhanced the quality of justice in our courts by improving the quality of instructions given to juries. The intention is to present patterns for simple, brief, accurate and unbiased statements of the law.... We recommend the use of these pattern instructions.
Letter from Justices to Members of the Washington Bench and Bar (Jan.1989), in 6 WPI at V. The Committee Chair noted the aim of the Committee "to present patterns for simple, brief, accurate and unbiased statements of the law...." 6 WPI, Preface at VII (Judge George T. Shields, Chair).
Clearly, the criminal pattern instructions have been formulated with the same goals in mind. Further, the importance this court attaches to the pattern instructions is evident in the many cases where the court refers to the instructions or to the Committee's comments. Indeed, this court has specifically referred prosecutors to the criminal pattern instructions for the purpose of identifying, in many cases, the essential elements that must be included in a charging document. State v. Kjorsvik, 117 Wash.2d 93, 102 n. 13, 812 P.2d 86 (1991).
This court has said the invited error doctrine serves to avoid a defendant's misleading the trial court. State v. Henderson, 114 Wash.2d 867, 868, 792 P.2d 514 (1990). I cannot conceive how that purpose is furthered by condemning the defendant for doing exactly what most attorneys do, with this court's general approval, in proposing instructions  rely on the Committee's pattern *1059 jury instructions. The Court of Appeals sensibly refused to apply the invited error doctrine in a criminal case where, in the absence of a criminal pattern instruction on superseding intervening cause, the civil pattern instruction proposed by the defense was given. State v. Young, 48 Wash.App. 406, 414-15, 739 P.2d 1170 (1987). Although it is now apparent that criminal pattern instruction 16.02 on self-defense could lead to fatal ambiguity should it be given alone, defendants should not be faulted for proposing the instruction.
The injustice in applying the invited error doctrine in these circumstances is underscored in the majority's analysis. While the majority applies the doctrine where defendants have proposed pattern jury instructions, the majority also holds that giving of a pattern instruction is not ineffectiveness of counsel because it is not deficient performance for counsel to rely upon the pattern instructions.
I would hold the invited error doctrine does not apply where the instructions proposed are pattern jury instructions.
I would, nevertheless, affirm the convictions in four of these consolidated cases. In a decision filed shortly after oral argument in this matter, the court held that while 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.02, at 176 (2d ed. 1994) (WPIC) is ambiguous and presumptively prejudicial, the jury is nevertheless adequately instructed on the law of self-defense where WPIC 16.07 is given along with WPIC 16.02. State v. Hutchinson, 135 Wash.2d 863, 884-85, 959 P.2d 1061 (1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1065, 143 L.Ed.2d 69 (1999). The two instructions, "taken in their entirety, properly state[] the law." Id. at 885, 959 P.2d 1061. Because both of these instructions were given in State v. Studd, 87 Wash. App. 385, 942 P.2d 985 (1997), State v. Cook, No. 19020-6-II, 1997 WL 404059 (Wash.Ct. App. July 18, 1997), State v. Bennett, 87 Wash.App. 73, 940 P.2d 299 (1997) and State v. McLoyd, 87 Wash.App. 66, 939 P.2d 1255 (1997), I would affirm in these cases on the basis that no instructional error occurred. In two of the cases, State v. Ameline, No. 17339-5-II, 1997 WL 417958 (Wash.Ct.App. July 25, 1997) and State v. Fields, 87 Wash. App. 57, 940 P.2d 665 (1997) instructional error did occur because WPIC 16.02 was given alone, and reversal for new trials is proper.
I concur in the result reached by the majority.
SANDERS, J. (concurring in part, dissenting in part).
I agree with the majority that the conviction of Daun Bennett must be affirmed because he has not shown his counsel was deficient and, thus, cannot prevail on his ineffective assistance of counsel claim. I also agree with the majority that the convictions of William Ameline and Vincent Fields should be reversed and remanded for retrial because the jury instructions used in their trials were clearly erroneous. However, I disagree with the majority's dispositions as to Keith Studd, Lee Cook, and Raymond McLoyd. The majority affirms their convictions even though the jury instructions used in procuring their convictions contained fatal flaws which may have resulted in criminal convictions of innocent men.
The majority correctly frames the issue as to Studd, Cook, and McLoyd as "[w]hether a jury instruction that erroneously states the law of self-defense furnishes a basis for a new trial when the erroneous instruction is requested by the defendant." Majority at 1051. The answer to this question is undeniably "yes." In State v. LeFaber we held "A jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial" and requires reversal. State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996).
Here, defendants Studd, Cook, and McLoyd each admitted the killing but each raised self-defense at trial. Further, each defendant raised the specter that he reasonably, but mistakenly, feared for his life when he slayed the victim. The issue at each of the three trials in question was the validity of each defendant's claim of self-defense. In particular the critical question was whether each defendant may have reasonably, albeit *1060 mistakenly, believed he was in mortal danger when he killed the victim.
In LeFaber we established that a defendant may successfully prevail on a claim of self-defense if he reasonably, but mistakenly, believed he was in imminent danger when he slayed the victim. 128 Wash.2d at 899-900, 913 P.2d 369. When such a defense is raised, the instructions "must more than adequately convey the law of self-defense" and "must make the relevant legal standard `manifestly apparent to the average juror.'" Id. at 900, 913 P.2d 369 (quoting State v. Allery, 101 Wash.2d 591, 595, 682 P.2d 312 (1984)). Thus, a self-defense jury instruction is erroneous if it does not make it manifestly apparent to the average juror that a person is entitled to use self-defense even though he is not in actual danger so long as he reasonably (but mistakenly) believes he is in danger. State v. Theroff, 95 Wash.2d 385, 390, 622 P.2d 1240 (1980). The instruction is likewise erroneous if it leaves ambiguous whether actual danger is required. LeFaber, 128 Wash.2d at 902, 913 P.2d 369.
Here the court issued the approved Washington Pattern Jury Instruction 16.02 verbatim, which stated there must be actual danger in order for the defendant to invoke self-defense. See Majority at 1051 (self-defense is available only if "[t]here was imminent danger of such harm being accomplished....") (quoting WPIC 16.02). As the majority notes, this instruction was invalidated shortly after the three trials by this court in LeFaber because it fails to make manifestly apparent that a mistaken but reasonable belief will suffice. Majority at 1054. In fact, the instruction does the opposite by unambiguously providing that there must be actual imminent danger of such harm being accomplished. As such the instruction is clearly inadequate.[1] Here, the juries might have found that the defendants reasonably, but mistakenly, feared for their lives when they acted in self-defense. In such case the instructions require the jury to convict while the law says acquit. Under LeFaber a conviction procured under such circumstances is constitutionally defective and reversal is mandated.
But the majority denies these defendants the new trial which our law requires on the ground that the defendants invited the error. Majority at 1055. But in each of these three cases the defendants merely requested pattern jury instructions verbatim which were accepted and approved at the time.
The invited error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." State v. Pam, 101 Wash.2d 507, 511, 680 P.2d 762 (1984), overruled on other grounds by State v. Olson, 126 Wash.2d 315, 893 P.2d 629 (1995). For example, in Pam the State had intentionally created the appealable issue simply as a test case to push an appeal. State v. Pam, 101 Wash.2d at 511, 680 P.2d 762. Because the State had set up the error at trial only to challenge it on appeal we rightly closed the appellate court doors. In the present cases, however, the defendants did not set up the error in this sense. The defendants were simply trying to make an accurate statement of the law using approved pattern jury instructions. The majority emphasizes this point when it denies Bennett's ineffective assistance of counsel claim on the grounds counsel acted properly in relying on accepted pattern jury instructions. See Majority at 1057 ("LeFaber had not been decided *1061 at the time of Bennett's trial, so his counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned WPIC 16.02."). The majority cannot have it both ways.
The majority concedes it applies a "strict rule." Majority at 1055. It does indeed. The majority sends three men to prison for life even though the jury instructions used in procuring their convictions were erroneous on the critical point. We cannot say how the jury would have ruled under proper instructions on self-defense. Indeed, it is conceivable that under correct jury instructions at least one of these defendants would be found not guilty and acquitted by reason of self-defense. The integrity of the system as well as the fates of three men imprisoned for life cry for a retrial.
I note that application of the invited error doctrine is not as inflexible as the majority suggests. For example, in LeFaber this court reviewed the erroneous self-defense instruction without attaching any importance to the question of whether the defendant had proposed the incorrect jury instruction. The critical question in LeFaber was whether the instruction, and thus the conviction, was erroneous. Even more on point is State v. Young, 48 Wash.App. 406, 415, 739 P.2d 1170 (1987) wherein the court found the invited error doctrine inapplicable because "the proposed instruction was a Washington pattern civil instruction." The Court of Appeals did the same in State v. Studd:
Generally, defendants are not allowed to request an instruction at trial and later seek reversal on the basis of claimed error relating to the same instruction. State v. Henderson, 114 Wash.2d 867, 868, 792 P.2d 514 (1990). The policy underlying this rule is the courts do not want to encourage defendants to mislead the court and, therefore, provide a reason for appeal. Id. at 868 [792 P.2d 514]. However, this case poses a unique situation. Defendants offered a Washington Pattern Jury Instruction which at the time was upheld by this court, only later to be struck by the Supreme Court as an ambiguous and erroneous statement of the law. LeFaber, 128 Wash.2d at 901-02 [913 P.2d 369]. This case presents circumstances which justify an exception to the invited error rule.
87 Wash.App. 385, 389-90, 942 P.2d 985 (1997).
We should allow a defendant to challenge erroneous jury instructions in cases where the defendant sought an approved pattern jury instruction in good faith only to have the same instruction invalidated as erroneous after defendant's trial but before his appeal is finalized. Such a rule would be in keeping with the general rule that "constitutional rulings in criminal cases apply retroactively to all cases not yet finally decided on direct review." State v. Campbell, 125 Wash.2d 797, 800, 888 P.2d 1185 (1995). Cf. Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (actual innocence may be shown notwithstanding procedural bar in habeas proceeding).
Additionally, such rule would be in keeping with that used in sister jurisdictions. For example, in the Ninth Circuit a defendant may challenge jury instructions even if he proposed or assented to them unless he knew or had reason to know they were faulty. United States v. Perez, 116 F.3d 840, 845 (9th Cir.1997) (en banc). California follows a similar rule: "For the doctrine of invited error to apply, it must be clear from the record that counsel had a deliberate tactical purpose in suggesting or acceding to an instruction, and did not act simply out of ignorance or mistake .... This is because important rights of the accused are at stake, and it is the trial court's duty fully to instruct the jury." People v. Maurer, 32 Cal.App.4th 1121, 1127, 38 Cal.Rptr.2d 335 (1995). See also State v. Griffith, 110 Idaho 613, 716 P.2d 1385, 1386 (1986) (invited error doctrine inapplicable where counsel sought the instruction "without any apparent tactical purpose").
To adhere to the majority's strict rule under the unusual facts of the three cases at issue here sacrifices justice and sends three men to prison under an erroneous charge to *1062 the jury. The integrity of our system instead demands retrial for Studd, Cook, and McLoyd.[2]
NOTES
[1] Cook pleaded guilty to the latter charge.
[2] The State subsequently moved for dismissal of the first charge.
[3] Fields did not appeal convictions for second degree theft, possession of methamphetamine, and possession of cocaine with intent to deliver. State v. Fields, 87 Wash.App. 57, 61 n. 1, 940 P.2d 665 (1997).
[4] Had McLoyd sought, and been denied, a clarifying instruction, the error would not have been invited. However, here his request for a clarifying instructionWPIC 16.07was, in fact, acceded to. McLoyd is prohibited from "setting up an error at trial and then complaining of it on appeal. The present case does exactly that." State v. Pam, 101 Wash.2d 507, 511, 680 P.2d 762 (1984) (citation omitted), overruled on other grounds by, State v. Olson, 126 Wash.2d 315, 321, 893 P.2d 629 (1995).
[5] Concurrence at 1058 (emphasis added).
[1] As an aside the majority references the curing instruction, WPIC 16.07, and suggests that this instruction cured the "ambiguity" in WPIC 16.02, rather than created one. Majority at 1056 (citing State v. Hutchinson, 135 Wash.2d 863, 884, 959 P.2d 1061 (1998)). However, WPIC 16.02 is not ambiguous. It is a clear misstatement of the law. A clear misstatement may not be cured by another instruction as we have squarely held any attempt to cure a misstatement results in an impermissible ambiguity. State v. Walden, 131 Wash.2d 469, 478, 932 P.2d 1237 (1997). Since I cannot reconcile this court's well-reasoned and long-standing rule as articulated in Walden with its erroneous application in Hutchinson, I would give these defendants the benefit of the rule in Walden a rule which Hutchinson does not purport to abandon except by its mistaken application. Compare Hutchinson, 135 Wash.2d at 885, 959 P.2d 1061 ("While instruction 24 could have been interpreted to require actual imminent danger, instruction 30 explicitly informed the jury the defendant was entitled to act on appearances ....") with Walden, 131 Wash.2d at 478, 932 P.2d 1237 ("[T]he rule requiring instructions to be considered as a whole does not save the internally inconsistent instruction in this case.").
[2] Additionally, the majority's treatment of the no-duty-to-retreat issue raised by Cook is unpersuasive. Cook asked for a no-duty-to-retreat instruction but was denied one even though such is an accurate statement of the law and the facts supported such instruction. See State v. Allery, 101 Wash.2d 591, 598, 682 P.2d 312 (1984) (Washington follows the no-duty-to-retreat rule); State v. Theroff, 95 Wash.2d 385, 389, 622 P.2d 1240 (1980) ("Each side is entitled to have the trial court instruct upon its theory of the case if there is evidence to support that theory.").