153 P.3d 890 (2007)
In the Matter of the Personal Restraint of Armando A. REED, Petitioner.
No. 25066-1-III.
Court of Appeals of Washington, Division 3.
March 1, 2007.
*891 Janet G. Gemberling, Julia Anne Dooris, Gemberling & Dooris PS, Spokane, WA, for Petitioner.
Gary Alan Riesen, Douglas J. Shae, Attorneys at Law, Wenatchee, WA, for Respondent.
KULIK, J.
¶ 1 In Armando Reed's direct appeal from convictions for first degree manslaughter and first degree arson, he contended that the superior court erroneously instructed the jury on the law of self-defense by stating that the defendant must be in actual danger of imminent harm. Mr. Reed asserted a new trial was required because this instruction had been expressly disapproved in State v. LeFaber, 128 Wash.2d 896, 913 P.2d 369 (1996).
¶ 2 This court held that because defense counsel had proposed the instruction, the invited error doctrine precluded Mr. Reed from asking for a new trial on the ground the instruction was faulty. State v. Reed, noted at 123 Wash.App. 1009, 2004 WL 1946384 (2004), review denied, 154 Wash.2d 1007, 113 P.3d 482 (2005). But this court also stated that if Mr. Reed had raised a claim that defense counsel provided ineffective assistance by proposing the erroneous instruction, the court would have addressed the issue on its merits. Id.
¶ 3 In this personal restraint petition, Mr. Reed argues that his lawyer's submission of an erroneous self-defense instruction amounted to ineffective assistance of counsel. We disagree. The instruction must be read in the context of the other instructions given to Mr. Reed's jury. One of these instructions affirmatively advised the jury that a right of self-defense exists even if the person, "acting as a reasonably prudent person[,] mistakenly believes" he is in danger. Court's Instructions to the Jury, Instruction No. 21 (emphasis added). We therefore conclude that counsel's performance was not deficient because the instructions, read as a whole, correctly stated the law of self-defense. Accordingly, we dismiss Mr. Reed's petition.

FACTS
¶ 4 On September 25, 2001, firefighters responded to a fire in a condominium located in Chelan County and discovered the charred remains of Michael Vincentini. An autopsy showed that Mr. Vincentini's body had been burned after death had occurred. His throat had been cut approximately four times. There were multiple stab wounds on other parts of his body.
¶ 5 The fire department determined an accelerant had been used to start two separate fires in the condominium  one on the body and the other in the master bedroom. Armando Reed, the victim's stepson, was identified as the person observed leaving the scene of the fire in a black sports car. Officers executed a search warrant for his apartment and discovered a large amount of cash, and clothing stained with blood. Tests *892 showed that the blood belonged to the victim and to Mr. Reed.
¶ 6 Mr. Reed was charged in the Chelan County Superior Court with first degree murder and first degree arson. The information included a deadly weapon enhancement. At trial in July 2002, Mr. Reed admitted he stabbed Mr. Vincentini, but Mr. Reed claimed he acted in self-defense. Several witnesses testified that Mr. Vincentini had a quick temper and had physically assaulted Mr. Reed on many occasions. On one occasion, Mr. Vincentini allegedly shot over Mr. Reed's head several times just to prove a point. Mr. Reed testified that he was afraid of Mr. Vincentini.
¶ 7 Mr. Reed also told the jury that Mr. Vincentini had asked him to come to Chelan County to interview for a job in the family owned business. But instead of a job interview, Mr. Vincentini asked Mr. Reed to set the condominium on fire so that Mr. Vincentini could collect on the insurance. When Mr. Reed refused, Mr. Vincentini became enraged and attacked Mr. Reed with a flashlight. At that point, Mr. Reed stated he picked up a knife from the kitchen counter and used it to protect himself. After Mr. Vincentini collapsed from the knife wounds, Mr. Reed left the home in his car. He panicked, and returned to the condominium and set Mr. Vincentini and the condominium on fire.
¶ 8 At the conclusion of the evidence, the court instructed the jury on the crimes of arson, first degree murder, and the lesser included offenses of second degree murder, and first and second degree manslaughter. The court also instructed the jury on self-defense. The jury returned guilty verdicts on first degree arson and first degree manslaughter. And, by special verdict, the jury found that Mr. Reed had used a deadly weapon in the commission of the manslaughter. The court imposed sentences on the convictions and a deadly weapon enhancement.

THE SELF-DEFENSE INSTRUCTIONS
¶ 9 The superior court instructed the jury in pertinent part, as follows:
INSTRUCTION 20
Homicide is justifiable when committed in the lawful defense of the slayer when: (1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury; (2) there was imminent danger of such harm being accomplished [;] and (3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.
(Emphasis added.)
¶ 10 The Supreme Court held a similar instruction that mirrored former Washington Pattern Jury Instruction (WPIC) 16.02,[1] could easily lead a jury to believe actual imminent harm was required based upon the provision calling for "`imminent danger of such harm being accomplished.'" LeFaber, 128 Wash.2d at 901, 913 P.2d 369. Because the standard of self-defense is based on the defendant's subjective, reasonable belief of imminent harm from the victim, and does not require a finding of actual imminent harm, the ambiguity of former WPIC 16.02 is misleading. Id. at 899, 902-03, 913 P.2d 369. The Court held the instruction's lack of clarity rendered it erroneous. Id. at 902-03, 913 P.2d 369.
¶ 11 But at Mr. Reed's trial, the court gave an additional instruction that was not given in LeFaber. This instruction stated that proof of actual imminent harm was not needed to sustain the right of self-defense. The instruction read as follows:
INSTRUCTION 21
If a person acting as a reasonably prudent person mistakenly believes himself to be in danger of injury or of an offense being committed against him, he has the right to defend himself by the use of lawful force *893 against that apparent injury or offense even if he is not actually in such danger.

(Emphasis added.)
¶ 12 Based on these instructions, defense counsel argued to the jury in closing that "the instructions tell you, you take it  not here, sitting in a nice air conditioned, comfortable room  you take it according to the person at the time the incident occurred, taking into account what they knew at that time, and even if they were wrong about the threat, if they believed it, that's sufficient." Report of Proceedings (RP) at 857 (emphasis added).

ISSUE
¶ 13 Did Mr. Reed receive ineffective assistance of counsel? Specifically, did he show (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense? See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); In re Pers. Restraint of Dalluge, 152 Wash.2d 772, 787-88, 100 P.3d 279 (2004). We hold that counsel's performance was not deficient and therefore, we do not reach the second question of prejudice.
¶ 14 The Washington Supreme Court has held that instructions identical to Instruction 20 and 21 here, when given together, adequately convey the law of self-defense. State v. Hutchinson, 135 Wash.2d 863, 885, 959 P.2d 1061 (1998). The court in Hutchinson distinguished LeFaber because the trial court in the case before it had given "an additional instruction which clarified any ambiguity created" by the first instruction. Id. at 884, 959 P.2d 1061. That additional instruction in Hutchinson is identical to Instruction 21 in Mr. Reed's case. The court held that while one instruction could have been interpreted to require actual imminent danger, another instruction explicitly informed the jury that Mr. Hutchinson was entitled to act on appearances and that actual danger was not required. Id. at 885, 959 P.2d 1061. Therefore, "the instructions, taken in their entirety, properly stated the law." Id.
¶ 15 The Supreme Court applied its holding in Hutchinson in a subsequent case, State v. Studd, 137 Wash.2d 533, 549, 973 P.2d 1049 (1999). There, the court reviewed six consolidated appeals. As to some of the defendants, the court held that invited error prevented them from challenging the self-defense instruction that LeFaber had disapproved. Id. at 546, 973 P.2d 1049. But, in one of the consolidated cases, the defense counsel had proposed not only the faulty instruction, but also an instruction identical to the second instruction in Hutchinson and in Mr. Reed's case. Id. at 543, 973 P.2d 1049. The trial court gave the faulty instruction, but refused to give the second instruction. Id. The Supreme Court held invited error did not apply in those circumstances. The Court reasoned that the second instruction, if given as counsel had requested, would have cured the error in the first instruction. Id. at 552, 973 P.2d 1049.
¶ 16 It follows that trial counsel's performance in Mr. Reed's case was not deficient. As in Hutchinson, the two instructions he proposed, and which the court gave, adequately conveyed the law of self-defense.
¶ 17 The court notes that during oral argument before this court, appointed counsel in this petition took the position that Instruction 21 was erroneous because a "reasonably prudent person [who] mistakenly believes himself to be in danger" is not the same as a person who believes in good faith and on reasonable grounds that he is in actual danger. The instruction in Hutchinson used "reasonably prudent person." Hutchinson, 135 Wash.2d at 884, 959 P.2d 1061. Hutchinson decides the semantic distinction against Mr. Reed. And we are bound to follow the holdings of the Washington Supreme Court. State v. Hairston, 133 Wash.2d 534, 539, 946 P.2d 397 (1997).
¶ 18 We also note that the holdings in Hutchinson and Studd reversed sub silentio our holding on the self-defense issue raised in State v. Birnel, 89 Wash.App. 459, 471, 949 P.2d 433 (1998). The superior court in Birnel gave two self-defense instructions, comparable in material part to the instructions at issue here. On appeal, we ordered a new trial because we concluded it was "impossible to tell which [of the two self-defense] instruction[s] the jury relied on to convict." Id. *894 Subsequently, the court in Hutchinson held that the second instruction cured any error in the first with respect to whether actual imminent harm had to exist for a person to act in self-defense. Although Hutchinson did not cite Birnel, it is clear that Hutchinson overruled one basis for our holding in Birnel. The other basis for our decision to order a new trial in Birnel  that the evidence did not support the aggressor instruction given by the superior court  remains good law. Id. at 473-74, 949 P.2d 433.
¶ 19 We also note that defense counsel discussed the LeFaber decision with the court prior to trial. See RP at 1-5. Although counsel focused on a different issue in LeFaber, this discussion undercuts the argument that counsel was unaware of the LeFaber decision as it relates to former WPIC 16.02.

SPECIAL VERDICT FORM
¶ 20 Mr. Reed raises a second issue in his petition. He argues the jury was misled by the special verdict form for the deadly weapon enhancement because the form did not specifically require a nexus between the deadly weapon and the offense.
¶ 21 Instruction 30 provided, as follows:
A person is armed with a deadly weapon if the deadly weapon is easily accessible and readily available for use by the person for either offensive or defensive purposes.
The special verdict form provided:
We, the jury, return a special verdict by answering as follows:
Was the defendant, Armando A. Reed, armed with a deadly weapon at the time of the commission of the crime in count I?
 ANSWER: ___________
 (Yes or No)
Petition, Appendix F.
¶ 22 Mr. Reed cites State v. Holt, 119 Wash.App. 712, 726-29, 82 P.3d 688 (2004) for the proposition that the special verdict is erroneous because it does not require a nexus between the defendant, the weapon, and the crime. The State counters that the verdict form is explained by Instruction 30, which clearly requires a nexus.
¶ 23 Holt was effectively overruled by the Washington Supreme Court in State v. Willis, 153 Wash.2d 366, 374, 103 P.3d 1213 (2005). Willis held that express "nexus" language is not required in the special verdict form if the instructions, taken as a whole, can be read to require such a relationship. Id.
¶ 24 In any event, Mr. Reed cannot prove actual prejudice from the language of the instruction, as is his burden in a personal restraint petition. In re Pers. Restraint of Gentry, 137 Wash.2d 378, 409, 972 P.2d 1250 (1999). He admittedly used the knife against Mr. Vincentini. This was not a case of only constructive possession of the deadly weapon. See State v. Easterlin, 159 Wash.2d 203, 210, 149 P.3d 366 (2006) ("There was . . . ample evidence from which a trier of fact could find Easterlin was armed to protect the drugs.").
¶ 25 The personal restraint petition is dismissed.
WE CONCUR: SWEENEY, C.J., and SCHULTHEIS, J.
NOTES
[1] Former 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.02, at 176 (2d ed.1994).