
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34837-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON DONTE WILLIAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Jason Williams appeals his convictions for second degree murder and three counts of first degree assault, primarily arguing that the court erred in giving an instruction advising jurors that revenge did not constitute self-defense. We affirm.

FACTS

This case involved a shooting in the drive-through lane of a Moses Lake Jack-in-the-Box restaurant around 1:30 a.m. on January 18, 2015. After a night of heavy drinking following a family wedding, Mr. Williams and his wife, Martha Mejia, pulled into the drive-through lane on their way home. Ms. Mejia was driving. A car driven by Cynthia Martinez also pulled into the drive-through lane behind the Mejia-Williams vehicle. There were four occupants of Ms. Martinez's vehicle, all of whom also had engaged in heavy drinking.

Deciding to leave, Ms. Mejia tried to back up, leading Ms. Martinez to honk her car's horn to stop Mejia from colliding with her. Ms. Mejia got out of the car and began arguing with Ms. Martinez.[1] Christian Guerra got out of the car to urge Mejia to calm down. Ms. Mejia called for assistance from Mr. Williams. Williams began arguing with Guerra and the two men began fighting between the two vehicles. Williams was knocked to the ground and Guerra continued beating on him.

The fight eventually ended and the combatants returned to their vehicles. Ms. Martinez again attempted to back up to escape the drive-through lane, but hit a curb and halted. Ms. Mejia got out and attempted to take pictures of Martinez's car's license plate. A female passenger in the Martinez vehicle yelled at Ms. Mejia to stop taking pictures. Mejia responded by going to the car, reaching through the window, and grabbing the passenger by her hair. Another passenger got out and pulled Mejia away, tossing her to the ground.

Williams then got out and returned to the Martinez car and attempted to punch Guerra through an open window. Guerra got out of the car and the two men engaged in another fight between the two vehicles. Once again losing the encounter, Williams walked back to his car and attention turned to where Mejia was in a struggle. Williams returned with a gun and pointed it at Guerra, who raised his hands above his head.

---

[1] The restaurant's video camera captured much, although not all, of the ensuing events.

2

Williams began firing at Guerra and at the car. Wounded, Guerra fell to the ground.

Williams and Mejia drove to their house. Martinez and her passengers drove Guerra to

the hospital where he expired.

Williams was charged with one count of first degree murder, three counts of

attempted first degree murder, and three counts of first degree assault. All counts

contained a firearm enhancement. The case eventually proceeded to jury trial. The

defense obtained jury instructions on self-defense, defense of others, and no duty to

retreat. Over defense objection, the State obtained an instruction on revenge:

> Justifiable homicide committed in the defense of the slayer, or "self-defense," is an act of necessity. The right of self-defense does not permit action done in retaliation or revenge.

Clerk's Papers (CP) at 73 (Instruction 26).

The parties argued the case under the competing theories of self-defense or

unjustified retaliation. The jury convicted Mr. Williams of the included offense of

second degree murder and on the three counts of first degree assault. All four offenses

were committed with a firearm.

After receiving a mitigated exceptional sentence that still tallied 40 years, Mr.

Williams appealed to this court. A panel considered the case without hearing argument.

3

ANALYSIS

This appeal presents two claims.[2] We initially will consider Mr. Williams' claim that the court erred by giving the revenge instruction. We then will turn to a contention that misconduct in closing argument requires a new trial.

*Jury Instruction*

The first contention is that the trial court erred in giving the revenge instruction, with Mr. Williams arguing that it unduly limited his right to act in self-defense by focusing on the element of necessity. Since the record supported the instruction, the trial court did not abuse its discretion.

Settled law governs this contention. Jury instructions are sufficient if they correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Discretion is abused when it

---

[2] Mr. Williams also filed a personal statement of additional grounds that we will not separately discuss. Some of the contentions are merely variations on his counsel's argument, while the other matters involve factual allegations outside of the record of this case. His remedy, if any, for those claims is to bring a personal restraint petition in which he can present his evidence in support of the arguments and allow the State to do the same. *See, e.g.*, *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995); *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The essence of Mr. Williams' argument here is that the instruction was erroneous because it focused on necessity rather than his subjective view of the need for self-defense. This is not a proper comparison of the purposes of the instructions. The standard for using self-defense was set out in Instruction 16. CP at 62. Following that instruction were a series of instructions focusing on differing aspects of the justifiable use of force. For instance, Instruction 18 advised jurors that a person acting in self-defense can only use necessary force. CP at 64. The definition of "necessary" was set out in Instruction 25. CP at 72. It was in this context that Instruction 26 advised jurors that revenge was not necessity. CP at 73.

Instruction 26 did not purport to be the complete law of self-defense, just as the other instructions supporting and explaining Instruction 16 did not themselves fully define the concept. Instead, each instruction had a specific part to play in explaining the concept of self-defense in its totality. Instruction 26 was not misleading and did allow the State to argue its theory of the case—Mr. Williams was acting out of vengeance rather than necessity. Nothing in that instruction prevented Mr. Williams from arguing his theory of the case. Accordingly, Instruction 26 was proper. *Dana*, 73 Wn.2d at 536-537.

Although he raises several distinct arguments against Instruction 26, they all flow from his perception that the instruction is erroneous. We need not address the contentions

separately because the instruction has already been upheld by *State v. Studd*, 137 Wn.2d

533, 550, 973 P.2d 1049 (1999). *Studd*, a consolidated appeal addressing six different

cases, primarily involved challenges to pattern self-defense instructions. Some of the

cases also presented additional challenges. The Pierce County case involving defendant

Lee Cook, Jr., was one of them.

The trial court had given an instruction identical to the one at issue in this case.

*Id*. Arguing that the instruction improperly emphasized the State's theory of the case,

Mr. Cook claimed that the instruction had never been approved and was improper. *Id*.

The court disagreed, noting that it was consistent with the court's decision in *State v.

Janes*, 121 Wn.2d 220, 240, 850 P.2d 495 (1993). Concluding its discussion of the

instruction, the *Studd* court stated:

> We find that the instruction correctly stated the law, and did not unfairly
> emphasize the State's theory of the case or, in any way, comment upon the
> evidence.

137 Wn.2d at 550.

*Studd* answers Mr. Williams' argument here. The instruction was not erroneous.

Moreover, this court, of course, is bound by a decision of the Washington Supreme

Court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). The trial court correctly

gave the revenge instruction under these facts. There was no error.

*Closing Argument*

Mr. Williams next argues, quite correctly, that the prosecutor erred in closing argument by challenging the jury to articulate any reasonable doubt it might be entertaining. The State now, also correctly, concedes the error. It argues, and we agree, that the error was not prejudicial.

In closing argument, the prosecutor told jurors that "if you can't assign a reason to that doubt, if you can't articulate or talk about what that doubt is, at that time you're beyond a reasonable doubt." Report of Proceedings (RP) at 2563. There was no objection by defense counsel.

It is improper for a prosecutor to urge jurors to "fill in the blanks" or otherwise force them to explain why they have a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584-585, 355 P.3d 253 (2015); *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). This error "subtly shifts the burden to the defense." *Emery*, 174 Wn.2d at 760. We agree with the parties that the statement was erroneous.

However, erroneous statements of this kind are not automatically grounds for reversal. *Id*. at 762-763. If defendant did not object at trial, the error is deemed waived unless the prosecutor's misconduct was so flagrant and ill-intentioned that it could not have been neutralized by a curative instruction. *Id*. at 760-761. The "flagrant and ill-intentioned" standard for misconduct requires the same "strong showing of prejudice" as the test for manifest constitutional error under RAP 2.5(a). *State v. O'Donnell*, 142 Wn.

7

App. 314, 328, 174 P.3d 1205 (2007). Under this heightened standard, the defendant must show that (1) "no curative instruction would have obviated any prejudicial effect on the jury" and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict." *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011).

The prosecutor's error was not prejudicially harmful under this demanding standard. The prosecutor's remark immediately followed a statement where he told jurors that the burden of proof "always" remained "at this table" and was the only statement of its kind occurring during a lengthy closing argument. RP at 2563. He concluded his argument by requesting that jurors find the defendant guilty of first degree murder of Mr. Guerra and attempted murder of the other three. He also told jurors that if they did not agree, second degree murder of Mr. Guerra and either first or second degree assault of the others were appropriate verdicts. RP at 2606. The jury rejected the greater charge in each instance and returned verdicts on the lesser offenses.

In the context of the argument, it is not likely that the jury considered the prosecutor's remarks as a shift in the burden of proof. More critically, the error was close enough that an objection could easily have led to a correction or clarification of the statement. This passing remark simply was not so egregious that the court could not have cured the problem. Although erroneous, the remark simply was not so flagrant that the fairness of this trial was impacted.

8

No. 34837-7-III
*State v. Williams*

The convictions are affirmed.[3]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Siddoway, J.

---

[3] Mr. Williams also asks that appellate costs be waived. In light of the prosecutor's statement that costs will not be sought, this issue is moot.