[Nos. 37074-0-I; 40467-9-I.    Division One.    October 20, 1997.]

THE CITY OF SEATTLE, *Respondent*, v. TIMOTHY NORBY, *Petitioner*.

THE CITY OF SEATTLE, *Petitioner*, v. ROY V. BURDGE, *Respondent*.

*Dmitri L. Iglitzen* and *Catherine A. Chaney* of *The Defender Association*, for petitioner Norby and respondent Burdge.

*Mark H. Sidran, City Attorney*, and *Richard E. Greene* and *Margaret M. Boyle, Assistants*, for the City.

WEBSTER, J. — Timothy Norby and Roy Burdge were each convicted by a jury of Driving While Intoxicated. In the wake of *State v. Crediford*, 130 Wn.2d 747, 927 P.2d 1129 (1996), they challenge the jury instructions and criminal complaint, arguing that the instructions and complaint omitted *Crediford*'s "implied element." In addition, Norby argues that a jury unanimity instruction was required. We granted discretionary review for a resolution of these issues.

We hold that: 1) *State v. Crediford* is binding authority with respect to its recognition of an "implied element" for the offense of Driving While Intoxicated under the "two-hour rule," 2) omission of *Crediford*'s "implied element" in the "to convict" jury instructions constitutes reversible error, 3) the criminal complaint in each case was constitutionally sufficient, and 4) no jury unanimity instruction was required. Accordingly, we reverse Norby's conviction on the basis of the instructional error. We affirm the RALJ court's March 6, 1997 decision reversing Burdge's conviction and also affirm the RALJ court's January 27, 1997 decision affirming Burdge's conviction to the extent that it found the criminal complaint constitutionally sufficient.

## FACTS

As Norby and Burdge raise the same challenges, we consolidate their cases on review.[1] *See* RAP 3.3(b).

### A. *City of Seattle v. Norby*

On February 5, 1994, Timothy Norby was arrested for Driving While Intoxicated and was administered a breath test at the police precinct. The first breath sample registered his breath alcohol concentration at 0.21 and the second breath sample registered his breath alcohol concentration at 0.20. He was subsequently convicted by a jury in Seattle Municipal Court of Driving While Intoxicated (DWI), under Seattle Municipal Code (SMC) 11.56.020.

Before *State v. Crediford*, 130 Wn.2d 747, 927 P.2d 1129 (1996), was decided, Norby appealed his conviction, arguing that the trial court erred by failing to provide a jury unanimity instruction because the DWI ordinance actually defines two separate crimes rather than two alternative means of committing the same crime. The RALJ court certified his appeal, and we granted discretionary review for a resolution of this issue. After our Supreme Court decided *Crediford*, Norby filed a supplemental brief with additional Assignments of Error, arguing that the "to convict" jury instruction omitted the "implied element," and the criminal complaint was constitutionally insufficient.

### B. *City of Seattle v. Burdge*

On January 6, 1994, Roy Burdge was arrested for Driving While Intoxicated and was administered a breath test at the police precinct. Both breath tests registered

---

[1]Although the City of Seattle did not submit a supplemental brief in Norby's case discussing *State v. Crediford*, 130 Wn.2d 747, 927 P.2d 1129 (1996), the City presented the same arguments for both Burdge's case and Norby's case at oral argument with respect to the issues stemming from *Crediford*.

Burdge's breath alcohol concentration at 0.12 grams of alcohol per 210 liters of breath. Before *Crediford* was decided, Burdge was convicted by a jury in Seattle Municipal Court of Driving While Intoxicated under SMC 11-.56.020.

On RALJ appeal, the court first affirmed Burdge's conviction, but later reversed it on the basis that the "to convict" jury instruction omitted *Crediford*'s "implied element." The City of Seattle sought discretionary review, arguing that *Crediford* did not create an "implied element" for the DWI offense, and if there were error, it was harmless. Burdge sought cross-review, arguing that the criminal complaint was constitutionally insufficient because it omitted the "implied element." We granted discretionary review for a resolution of these issues.

## DISCUSSION

### A. *State v. Crediford* and the "Implied Element"

In both cases, the City of Seattle argues that *State v. Crediford*, 130 Wn.2d 747, 927 P.2d 1129 (1996), did not create an "implied element" for the DWI statute because a majority of the justices did not adopt such a position. We disagree.

*Crediford* involved several constitutional challenges to the "two-hour rule" under Washington's former DWI statute, RCW 46.61.502. This statute is virtually identical to the Seattle ordinance in this case, SMC 11.56.020.[2] The statute at issue in *Crediford* stated:

---

[2]Seattle Municipal Code 11.56.020(A)(1) states:

A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within the City:

a. And the person has, within two (2) hours after driving, an alcohol concentration of 0.10 or higher, as shown by analysis of the person's breath or blood made under the provisions of this section; or

b. While the person is under the influence of or affected by intoxicating liquor or any drug; or

c. While the person is under the combined influence of or affected by intoxicating liquor and any drug.

(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:

(a) And the person has 0.10 grams or more of alcohol per two hundred ten liters of breath within two hours after driving, as shown by analysis of the person's breath made under RCW 46.61.506; or

(b) And the person has 0.10 percent or more by weight of alcohol in the person's blood within two hours after driving, as shown by analysis of the person's blood made under RCW 46.61.506[.]

*Crediford*, 130 Wn.2d at 752.

Crediford argued that the statute exceeded the Legislature's police power because a literal reading of the "two-hour rule" criminalized otherwise lawful conduct — that is, it was unlawful to have a certain alcohol concentration level within two hours after driving, regardless of whether one had been intoxicated *while* driving. *Id.* at 752-53. The four-person majority[3] held that the Legislature did not exceed its police power because "it was the Legislature's prerogative to determine that there is a relevant relationship between a driver's alcohol concentration of 0.10 percent or greater, as detected by an analysis of that person's breath or blood within two hours of driving, and the ability of that driver to have safely operated a motor vehicle within the previous two hours." *Id.* at 754.

However, in so concluding, the majority found it necessary to also conclude that there is an "implied element" in the statute:

It is equally clear to us, however, that the Legislature did not intend, by enacting this statute, to punish persons for the consumption of alcohol that was not associated with the operation of a motor vehicle. We say this despite the fact that a literal reading of [the "two-hour rule"] could lead a person to conclude otherwise. . . .

---

[3]Justices Alexander, Dolliver, Smith, and Guy formed the four-person majority in *Crediford*, 130 Wn.2d 747.

In order to give effect to the Legislature's intentions, and, at the same time, avoid the constitutional defect that arises if the statute has an overly broad scope, *we must, therefore, assume that a logically and legally required, albeit implied, element of the offense* described in RCW 46.61.502 *is that an amount of alcohol sufficient to cause a measurement of breath or blood of a defendant to register 0.10 percent or greater within two hours of driving was present in the defendant's system while he or she was driving.* This implied element (a nexus between the concentration of alcohol revealed by a blood or breath test administered within two hours of driving and the amount of alcohol present in the driver's system when driving) mitigates Crediford's concern that the statute criminalizes behavior not generally deemed criminal.

*Id.* at 755 (emphasis added). Thus, the majority recognized an additional, "implied," element to the "two-hour rule." A connection must be shown between the results of the blood or breath test, and the defendant's alcohol level *at the time of driving.* This burden rests with the prosecution; it is neither an unconstitutional conclusive presumption, nor an affirmative defense. *Id.* at 757-59. It appears that this nexus may be proven by showing that the defendant did not consume a sufficient quantity of alcohol between the time the defendant stopped driving and the time of the breath or blood test. *Id.* at 758-60, 768.

Two justices dissented.[4] However, it is clear that they dissented on narrow grounds:

We were asked only to decide whether [the "two-hour rule" under former RCW 46.61.502] (1) created an impermissible conclusive presumption, or (2) was an invalid exercise of police power. I concur in the majority's rejection of these arguments.

We were *not* asked to decide whether former RCW 46.61.502(3) impermissibly allocates the burden of proof to the defendant.

*Id.* at 769. That is, the dissent departed from the majority

---

[4]Chief Justice Durham and Justice Talmadge formed the two-person dissent in *Crediford.*

only on the burden of proof issue; the dissent otherwise explicitly concurred with the majority in rejecting Crediford's police power argument. Because the "implied element" issue stems from the police power discussion, there appears to be a six-person majority on the recognition of an "implied element" under the "two-hour rule."[5]

Although there was a three-person concurrence,[6] the only point of agreement the concurrence had with the majority is that the statute unconstitutionally shifted the burden of proof to the defendant. *Id.* at 762-63, 767-68. The concurring justices therefore did not agree with the majority's reasoning with regard to the "implied element."

Thus, it appears that a majority (six justices) of our Supreme Court agreed with the "implied element" issue, making it clear law.

## B. The "To Convict" Jury Instruction

■ As a preliminary matter, the City argues that Norby cannot raise additional assignments of error in his supplemental brief, as it exceeds the scope of discretionary review. However, although a court will normally decline to consider an issue raised for the first time in a supplemental brief filed after acceptance of review, the court has the inherent authority to consider the issue if such consideration is necessary to reach a proper decision. *Shoreline Community College Dist. No. 7 v. Employment Sec. Dep't,* 120 Wn.2d 394, 402, 842 P.2d 938 (1992); *see State v. Peerson,* 62 Wn. App. 755, 778, 816 P.2d 43 (1991) (an ap-

---

[5]That is, the recognition of the "implied element" appears to be an integral part of the police power discussion in *Crediford.* The Court recognized an "implied element" in order to salvage the statute from the challenge that it criminalized otherwise lawful behavior. Thus, *as construed,* "the statute's net is not cast so wide that it ensnares persons whose consumption of alcohol after driving causes, in whole or in part, that person's alcohol concentration to reach or exceed 0.10 percent within two hours of driving." *Crediford,* 130 Wn.2d at 755-56. The City, in fact, concedes that there is a clear majority on the police power issue.

[6]Justices Sanders, Johnson, and Madsen formed the three-person concurrence in *Crediford.*

apellate court may, but need not, consider a constitutional issue raised for the first time in a reply brief). We consider the constitutional issues raised in Norby's supplemental brief.

■ The City also contends that the RALJ court erred in allowing Burdge to challenge the "to convict" instruction for the first time on appeal. However, due process requires that jury instructions define every element of the offense charged, and failure to do so is an error of constitutional magnitude that may be raised for the first time on appeal. *State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985); *State v. Davis*, 27 Wn. App. 498, 506, 618 P.2d 1034 (1980) ("It cannot be said that a defendant had a fair trial . . . if the jury might assume that an essential element need not be proven."). The RALJ court did not err by allowing Burdge to challenge the "to convict" instruction for the first time on appeal.

■ Norby and Burdge invoke the due process clause of both the state[7] and federal[8] constitutions to challenge the trial court's failure to instruct the jury on *Crediford's* "implied element." *See Crediford*, 130 Wn.2d at 755. Due process requires that the prosecution prove each element of a crime. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Jury instructions must define every element of the offense charged. *State v. Johnson*, 100 Wn.2d at 623. The juries for both trials here received essentially the same "to convict" instruction:[9]

To convict the defendant of the crime of Driving While

---

[7]"No person shall be deprived of life, liberty, or property, without due process of law." CONST. art. I, § 3.

[8]"[N]or shall any state deprive any person of life, liberty, or property, without due process of law . . ." U.S. CONST. amend. XIV, § 1.

[9]The "to convict" instruction in Burdge's case read:

To convict the defendant of the crime of driving while under the influence, each of the following elements must be proved beyond a reasonable doubt:

(1) That on or about January 6, 1994, the defendant drove a motor vehicle;

Under the Influence, each of the following elements must be proved beyond a reasonable doubt:

(1) that on or about February 5, 1994, the defendant drove a motor vehicle;

(2) that the defendant had .10 grams or more of alcohol per two-hundred ten (210) liters of breath within two (2) hours of driving; or

(3) the defendant was under the influence of or affected by intoxicating liquor while driving; and

(4) that the act occurred in the City of Seattle.

This language tracks SMC 11.56.020(A)(1), which is virtually identical to the Washington DWI statute at issue in *Crediford*. The "to convict" instruction here clearly omits *Crediford*'s "implied element," as there is no mention of the City's burden to prove beyond a reasonable doubt the nexus between Burdge's breath alcohol concentration as tested at the police precinct and the amount of alcohol in his system at the time of driving.

▪ Because *Crediford*'s construction of the DWI statute " 'operates as if it were originally written into it,' " the "implied element" is deemed to have been a required element for both Burdge's conviction and Norby's conviction. *See Crediford*, 130 Wn.2d at 760 (citing *State v. Darden*, 99 Wn.2d 675, 679, 663 P.2d 1352 (1983) (quoting *Johnson v. Morris*, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976))). That is, "where a statute has been construed by the highest court of the state, the court's construction is deemed to be what the statute has meant since its enactment. In other words, there is no question of retroactivity." *State v. Moen*, 129 Wn.2d 535, 538, 919 P.2d 69 (1996). The City does not dispute this doctrine.

▪ Rather, the City argues that even if omission of the

(2) That the defendant either (a) had an alcohol concentration of 0.10 or higher within two (2) hours after driving; or (b) was under the influence of or affected by intoxicating liquor while driving; and

(3) That the driving occurred in the City of Seattle.

"implied element" constitutes error, it is harmless in both cases. Specifically, the City contends that the RALJ court erred in Burdge's case by relying on *State v. Smith*, 131 Wn.2d 258, 930 P.2d 917 (1997), to conclude that such omission constitutes reversible error. The City contends that *Smith* does not require automatic reversal for errors in "to convict" instructions, but instead requires the court to engage in harmless error analysis. The City further contends that the error in this case is harmless. Norby and Burdge, on the other hand, argue that *Smith* dictates automatic reversal in this situation. We agree with Norby's and Burdge's interpretation of *Smith*.

*Smith* involved a misstatement of the law in the "to convict" instruction. 131 Wn.2d at 262. Rather than defining the crime of conspiracy to commit murder, the instruction in effect defined the crime of "conspiracy to commit conspiracy to commit murder." *Id.*

The State in *Smith* argued that the error was harmless because both the defense and the prosecution discussed the correct elements of conspiracy during closing argument. *Id.* at 264. However, the Court concluded: "The jury was not required to search the other instructions to make sense of the erroneous 'to convict' instruction, and we cannot assume that the jury attempted to compensate for the court's error by doing so. We, therefore, cannot say that the error was harmless." *Id.* at 265.

The Court further stated:

Our holding today is in accord with prior cases out of this court holding that failure to instruct on an element of an offense is *automatic reversible error*. Recently, in *State v. Eastmond*, 129 Wn.2d 497, 503, 919 P.2d 577 (1996), we held that the omission of an element of the crime produces a "fatal error" by relieving the State of its burden of proving every essential element beyond a reasonable doubt. *See also State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995) (failure to instruct the jury on every element of the crime was *reversible*

*error* because such an error relieves the State of its burden of proving every element beyond a reasonable doubt).[10]

Several recent federal cases have similarly held that *harmless error analysis does not apply* to certain instructional errors that relieve the State of proving guilt beyond a reasonable doubt on every element of the crime.

*Id.* at 265 (emphasis added). Thus, our Supreme Court expressly acknowledged that a failure to instruct the jury on every element of the crime requires automatic reversal. Here, we have a wholesale omission of an essential element in the "to convict" instruction.[11] As recognized in *Smith*, such errors warrant automatic reversal.[12] *See id.* at 265-66; *see also State v. Daniels*, 87 Wn. App. 149, 154-55,

---

[10]*State v. Eastmond*, 129 Wn.2d 497, 919 P.2d 577 (1996), involved the failure to instruct the jury on specific intent, an essential element of second degree assault. 129 Wn.2d at 501-03. There, the Supreme Court stated "[b]y relieving the State of its burden of proving every essential element beyond a reasonable doubt, the omission of an element of the crime produces such a fatal error. . . . The trial court here likewise committed reversible error by failing to provide a specific intent instruction." *Id.* at 503.

*State v. Byrd*, 125 Wn.2d 707, 887 P.2d 396 (1995), also involved the failure to instruct the jury on the intent element for assault. 125 Wn.2d at 714-15. In conclusion, the Court stated: "By failing to set forth clearly the intent requirement for second degree assault, the trial court impermissibly removed the element of intent from the jury. This is reversible error." *Id.* at 716.

[11]We note that, unlike *Smith*, 131 Wn.2d at 262-65, neither Norby's case nor Burdge's case involves a situation where the missing element is contained elsewhere in the jury instructions.

[12]As we recently concluded in *State v. Jackson*, 87 Wn. App. 801, 814-15, 944 P.2d 403 (1997):

In some appeals that involve omissions or misstatements of elements in jury instructions . . . a harmless error analysis may be undertaken. But only if the misstatement or omission does not prevent the jury from actually considering the element. When the jury, as instructed, necessarily found facts that establish guilt beyond a reasonable doubt on every essential element, the actual verdict satisfies the core constitutional provisions [of the right to have a jury determine, beyond a reasonable doubt, every essential element of guilt under the Fifth and Sixth Amendments of the federal constitution] . . . . Under those circumstances, the court can apply harmless error analysis, and decide the effect that the erroneous instruction had on the trial.

But in other cases, an erroneous instruction on an element of guilt allows the jury to return a verdict without necessarily deciding the element. Then, the actual verdict is not a jury determination beyond a reasonable doubt as to every essential element of guilt. An appellate court cannot affirm the conviction by characterizing the error as harmless; in the absence of an actual jury

940 P.2d 690 (1997) ("Absence of an element from the instructions renders the verdict less than complete and the judgment reversible.") (citing *State v. Smith*, 131 Wn.2d 258). Therefore, (1) we reverse Norby's conviction on this basis, and (2) we conclude that the RALJ court did not err by reversing Burdge's conviction.

## C. The Charging Complaint

■ Norby in his supplemental brief and Burdge in his cross-appeal contend that the criminal complaint was constitutionally insufficient for failure to include *Crediford*'s "implied element."[13] A challenge to the sufficiency of a charging document is of constitutional magnitude and may be raised for the first time on appeal. *State v. Campbell*, 125 Wn.2d 797, 801, 888 P.2d 1185 (1995). Burdge specifically argues that, in reviewing the criminal complaint, the RALJ court erred by construing the complaint under the liberalized standard of review of *State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991).

■ Under the state[14] and federal[15] constitutions, all essential elements of a crime, including common-law ele-

determination as to guilt on every essential element of guilt, applying harmless error analysis is tantamount to directing a verdict. Without question, the court cannot direct a verdict against a criminal defendant.

(footnotes omitted).

Such is the case here. The omission of *Crediford*'s "implied element" in the jury instructions prevented the jury from actually considering the element. That is, the instructions allowed the jury to find Norby and Burdge guilty of Driving While Intoxicated under the "two-hour rule" without finding that their breath alcohol concentration as measured at the police precinct reflected their breath alcohol level at the time of driving. Thus, this instructional omission is "so fundamental that verdicts upon which they are based are altogether insusceptible of harmless error analysis." *See Jackson*, 87 Wn. App. at 813.

[13]Although the RALJ court reversed Burdge's conviction in its March 6, 1997 decision, it did so on the basis that the "to convict" jury instruction was deficient, not on the basis that the criminal complaint was deficient. Burdge therefore cross-appeals on this issue.

[14]"In criminal prosecutions the accused shall have the right to . . . demand the nature and cause of the accusation against him . . . ." CONST. art. I, § 22 (amend. 10).

[15]"In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation . . . ." U.S. CONST. amend. VI.

ments, must be included in a charging document "in order to afford notice to an accused of the nature and cause of the accusation against him." *Id.* at 97. Under this "essential elements" rule, mere recitation of the statutory elements of a crime may not be sufficient; the defendant must be informed of all elements of the crime charged and of the conduct alleged to have constituted the crime. *Id.* at 98. This ensures that the defendant is "give[n] notice . . . of the nature of the crime that he or she must be prepared to defend against." *Id.* at 101.

■ If an appellant challenges the sufficiency of the charging document after the verdict or on appeal, then the court must construe the document liberally and review it in favor of its validity. *Id.* at 105. This involves a two-part inquiry: (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice? *Id.* at 105-06. The conviction should be dismissed if the defendant can show that he or she lacked the requisite notice to prepare an adequate defense. *State v. Hopper*, 118 Wn.2d 151, 156, 822 P.2d 775 (1992).

However, if an appellant challenges the sufficiency of the charging document prior to the verdict, then the court does not apply a liberalized standard of review, but instead reviews the charging document under the strict construction test. *State v. Tang*, 77 Wn. App. 644, 647, 893 P.2d 646, *review denied*, 127 Wn.2d 1017 (1995). Under this test, "the language in the information must clearly suggest the requisite elements of the charged crime." *Id.*

■ Because Norby and Burdge challenge the sufficiency of the criminal complaint for the first time on appeal, we construe the complaint liberally under *Kjorsvik*. Applying the first prong of the *Kjorsvik* test, we conclude that the complaint clearly gave Norby and Burdge notice of the elements of the charge against them.

The criminal complaints against both Norby and Burdge are virtually identical. They allege the commission of the crime of Driving While Intoxicated in Seattle, by:

driving a vehicle within the City of Seattle *and* having 0.10 grams or more of alcohol per two hundred ten (210) liters of breath within two (2) hours after driving, *and while* under the influence of and affected by intoxicating liquor.

(Emphasis added.)

Significantly, this language does not quite track the language of SMC 11.56.020. Critical to the complaint are the conjunctions "and" and "and while," which necessarily connect being "affected by intoxicating liquor" with "driving a vehicle" and the results of the breath test. These links show that one is not simply charged with having a certain alcohol concentration within two hours after driving (which is how SMC 11.56.020(A)(1) could be construed). Rather, one is charged with having a certain alcohol concentration within two hours after driving *and* driving while affected by alcohol.

The complaint "contains allegations that express the crime which was meant to be charged," and is therefore sufficient. *See Hopper*, 118 Wn.2d at 156. The complaint may not rise to the level of precisely defining *Crediford*'s "implied element;" however, the necessary facts can be found by fair construction of the charging document. *See id.* (when construing a charging document liberally, "[e]ven missing elements may be implied if the language supports such a result."). The complaint here is "written in such a manner as to enable persons of common understanding to know what is intended." *See State v. Simon*, 120 Wn.2d 196, 199, 840 P.2d 172 (1992).

Next, we ask whether Norby and Burdge have shown that they were nonetheless prejudiced by any vague or inartful language in the charging document. *See Kjorsvik*, 117 Wn.2d at 106. Neither alleges prejudice. Moreover, upon independent review of the record, nothing shows that Norby and Burdge suffered prejudice from the man-

ner in which the crime was charged. In fact, Norby argued at trial that a jury unanimity instruction was required because the "two-hour rule" was a separate crime rather than an alternate means of committing the same crime, and Burdge challenged the constitutionality of the "two-hour rule" in a pretrial motion on the basis that a literal reading of the DWI ordinance could criminalize otherwise lawful behavior. They were therefore concerned that, under the ordinance as written, the jury might *not* link the breath test with the alcohol in the driver's system at the time of driving. This shows an apparent understanding of *Crediford*'s "implied element," and as such, both Norby and Burdge "actually received notice of the charges . . . [they] must have been prepared to defend against." *See id.* at 106.

As discussed above, the resulting errors in their trials stem from the "to convict" instruction, which was worded quite differently from the criminal complaint. By contrast, the criminal complaint in each case was constitutionally sufficient.

## D. Unanimity Instruction

To convict a person of a criminal charge, the jury must be unanimous that the defendant committed the criminal act. *State v. Camarillo*, 115 Wn.2d 60, 63, 794 P.2d 850 (1990). If multiple acts are alleged, where any one of several acts could constitute the crime charged, then the jury must be unanimous as to which act constitutes the crime. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). In such a case, a jury unanimity instruction must be given or the State must elect which act constituted the crime. *Camarillo*, 115 Wn.2d at 63-64. Failure to do so results in a violation of the right to a unanimous jury verdict under the state constitution and of the right to a jury trial under the federal constitution. *Id.*; CONST. art. I, § 22 (amend. 10); U.S. CONST. amend. VI.

Norby contends that the trial court erred in denying his

motion for a unanimity instruction requiring the jury to agree unanimously whether to convict him under the "two-hour rule" of SMC 11.56.020(A)(1), or under the "driving while under the influence" prong of the ordinance.[16] He argues that this is a multiple acts case because the "two-hour rule" under SMC 11.56.020(A)(1) actually defines a separate crime, and not simply an alternative means of committing the same crime. We disagree.

■ To determine if a statute describes a single offense committable by alternative means, rather than multiple offenses, the court must determine whether the Legislature intended to define only one crime and the different ways in which the crime could be committed. *State v. Arndt*, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976). If this determination cannot be made by reviewing the statute on its face, then the court may look to (1) the title of the act, (2) a readily perceivable connection between the various acts set forth, (3) whether the acts are consistent with and not repugnant to each other and (4) whether the acts may inhere in the same transaction. *Id.* at 378-79.

We therefore first look to the statute in question to ascertain legislative intent. As acknowledged in *State v. Crediford*, 130 Wn.2d at 755, a literal reading of the "two-hour rule" would suggest that it defines a separate crime — that it would be unlawful to simply have a certain alcohol concentration level within two hours of driving, regardless of whether one was in fact intoxicated *while* driving. However, *Crediford* makes clear that the "two-hour rule" is not a separate crime.

As discussed above, Crediford argued that the Legislature exceeded its police power in enacting RCW 46.61.502 because the "two-hour rule" criminalized otherwise lawful conduct. *Id.* at 752-53. Thus, Crediford's argument was

---

[16]The trial court instructed the jury:

Subsections (2) and (3) are alternatives and only one need be proved. In addition, you do not need to be unanimous as to which alternative is proved; only unanimous that the defendant is guilty of one of the alternatives.

premised upon the same argument as Norby's here — that the "two-hour rule" is a separate crime from the crime of actually "driving while intoxicated."

Because our Supreme Court disagreed and instead recognized an additional element to the "two-hour rule," its decision in *Crediford* has addressed Norby's concern regarding whether the amount of alcohol in the driver's system at the time of driving is an element of the offense under the "two-hour rule." The "two-hour rule" is necessarily linked to the crime of "driving while intoxicated" and thus is not a separate crime.

Moreover, although *State v. Franco*, 96 Wn.2d 816, 639 P.2d 1320 (1982), examined an older version of Washington's DWI statute (former RCW 46.61.502), which did not include the "two-hour rule," *Franco* is nevertheless applicable because the statute there was structured exactly like SMC 11.56.020. The statute in *Franco* read:

A person is guilty of driving while under the influence of intoxicating liquor or any drug if he drives a vehicle within this state while:

(1) He has 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood, or other bodily substance made under RCW 46.61.506 as now or hereafter amended; *or*

(2) He is under the influence of or affected by intoxicating liquor or any drug; *or*

(3) He is under the combined influence of or affected by intoxicating liquor and any drug.

*Id.* at 819.

The Court found that because each subsection was separated by the disjunctive "or," the statute unambiguously presented three alternate ways of committing the DWI offense, rather than defining three separate offenses. *Id.* at 821. That is, the Legislature did not state that a defendant could be convicted under one subsection and concurrently, or additionally, be convicted under another

subsection. *Id.* Such is the case with SMC 11.56.020. Because each subsection is separated by the disjunctive "or," the ordinance cannot be read to threaten three concurrent convictions. Because it is clear from *Crediford* and *Franco* that Seattle's DWI ordinance defines alternative means of committing the same crime, rather than separate crimes, we do not need to apply *Arndt's* four-factor test. The trial court did not err in denying Norby's requested jury unanimity instruction.

We reverse Norby's judgment and sentence and remand for a new trial on the basis of the instructional error.[17]

We affirm the RALJ court's March 6, 1997 decision reversing Burdge's conviction on the basis of the instructional error.

We affirm the RALJ court's January 27, 1997 decision affirming Burdge's conviction, but only to the extent that it found the criminal complaint constitutionally sufficient.

KENNEDY, A.C.J., and Cox, J., concur.

---

[17]We note that unlike the situation in *Crediford*, Norby's trial was not conducted on stipulated facts. *See Crediford*, 130 Wn.2d at 760-61. We further note that if reversal of a conviction is not based upon insufficiency of the evidence, then the defendant may be retried for the convicted offense without violating the protection against double jeopardy. *State v. Anderson*, 96 Wn.2d 739, 742, 638 P.2d 1205 (1982). As stated in *Burks v. United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978):

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. . . . Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., . . . incorrect instructions . . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.