22 P.3d 264 (2001)
105 Wash.App. 926
STATE of Washington, Respondent,
v.
Craig F. HABERMAN, Appellant.
No. 23843-8-II.
Court of Appeals of Washington, Division 2.
April 20, 2001.
*265 Christopher William Bawn, Olympia, for Appellant.
Steven Curtis Sherman, Thurston County Prosecutors Office, Olympia, for Respondent.
HUNT, J.
Craig Haberman appeals his conviction for malicious harassment, RCW 9A.36.080, based on angry racial comments and threats he made to a grocery clerk who had refused to sell him beer the previous night when Haberman appeared intoxicated. Haberman argues that (1) the State charged him under an invalid, old law, which the Legislature had amended before the incident, and (2) the trial court gave erroneous jury instructions based upon outdated statutory language.[1] We agree with Haberman and reverse.

FACTS
On the evening of June 4, 1998, Haberman was waiting in the check-out line at Bayview Thriftway in Olympia. Head cashier, Daniel Ward, relieved the checker, who was scheduled to go on break. As Ward entered the check stand, Haberman asked Ward, "Are you going to sell me a bag of chips?" Ward answered, "Sure," to which Haberman replied, "But you wouldn't sell me a half case of beer last night." Ward told Haberman, "I didn't think you were in shape to have any more beer last night." Haberman started arguing with Ward,[2] who told Haberman to leave.
Haberman gestured close to Ward's face, threatened to get even with Ward, and made several racial slurs concerning Ward's Asian ancestry. Ward followed Haberman out of the store, telling the other sales clerk to call the police, who happened to be across the street. After the police arrested, handcuffed, and placed Haberman in the back of a police car, he continued to yell at Ward. The arresting officer "could smell an odor of alcoholic beverage on Mr. Haberman's breath, and his speech was slurred."
The State charged Haberman with malicious harassment in violation of RCW 9A.36.080(1)(c). At trial, the court allowed testimony concerning a possible intoxication defense. But it refused Haberman's offer of proof and his request to present testimony about Haberman's tendency to "act out," to scream, and to yell at people irrationally, without regard to race.
Haberman objected to four instructions (numbers 5, 6, 7 and 11a) and to the trial court's refusal to give his proposed harassment instruction (the legislative findings in RCW 9A.36.078). On appeal, Haberman assigns error to four other jury instructions (numbers 4, 8, 9 and 11). We focus on the State's use of an invalid law to charge Haberman and the trial court's use of related, erroneous instructions to charge the jury.

ANALYSIS

I. HISTORY OF MALICIOUS HARASSMENT LAW
In State v. Talley, 122 Wash.2d 192, 858 P.2d 217 (1993), the Supreme Court held that *266 the 1989 malicious harassment law was, in part, unconstitutional for being a content-based regulation of protected speech. Prior to Talley, the malicious harassment law[3] provided as follows:
A person is guilty of malicious harassment if he maliciously and with the intent to intimidate or harass another person because of, or in a way that is reasonably related to, associated with, or directed toward, that person's race, color, religion, ancestry, national origin, or mental, physical, or sensory handicap:
(a) Causes physical injury to another person; or
(b) By words or conduct places another person in reasonable fear of harm to his person or property or harm to the person or property of a third person. Such words or conduct include, but are not limited to, (i) cross burning, (ii) painting, drawing, or depicting symbols or words on the property of the victim when the symbols or words historically or traditionally connote hatred or threats toward the victim, or (iii) written or oral communication designed to intimidate or harass because of, or in a way that is reasonably related to, associated with, or directed toward, that person's race, color, religion, ancestry, national origin, or mental, physical, or sensory handicap. However, it does not constitute malicious harassment for a person to speak or act in a critical, insulting, or deprecatory way unless the context or circumstances surrounding the words or conduct places another person in reasonable fear of harm to his or her person or property or harm to the person or property of a third person.....
Laws of 1989, ch. 95, § 1, (also, formerly codified as RCW 9A.36.080(1)).
In response to Talley, the Legislature extensively rewrote the 1989 malicious harassment law, (Laws of 1989, ch. 95, § 1, and RCW 9A.36.080), amending not only the unconstitutional second section of the law, but also the first section, under which the State erroneously charged Haberman.
The current malicious harassment law now reads as follows:
A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap:
(a) Causes physical injury to the victim or another person;
(b) Causes physical damage to or destruction of the property of the victim or another person; or
(c) Threatens a specific person or group of persons and places that person, or members of the specific group of persons, in reasonable fear of harm to person or property. The fear must be a fear that a reasonable person would have under all circumstances. For purposes of this section, a "reasonable person" is a reasonable person who is a member of the victim's race, color, religion, ancestry, national origin, gender, or sexual orientation, or who has the same mental, physical, or sensory handicap as the victim. Words alone do not constitute malicious harassment unless the context or circumstances surrounding the words indicate the words are a threat. Threatening words do not constitute malicious harassment if it is apparent to the victim that the person does not have the ability to carry out the threat.
Laws of 1993, ch. 127, § 2, currently codified as RCW 9A.36.080(1).
There are significant differences between the two laws that affect the case before us. First, the newer, 1993 malicious harassment law criminalizes a malicious and intentional act committed "because of his or her perception of the victim's race." In contrast, the old law required merely that the act be "reasonably related to, associated with, or directed toward, that person's race." *267 9A.36.080(1). Second, the new law requires a threat to a specific person that places that person in "reasonable fear of harm," accompanied by the perpetrator's apparent ability to carry out the threat; "[w]ords alone do not constitute malicious harassment...." Laws of 1993, ch. 127, § 2, codified as RCW 9A.36.080(1)(c). In contrast, the old law allowed a conviction based solely on the defendant's placing the "victim" in fear of harm; it did not make clear, as does the new law, that words alone do not constitute malicious harassment.

II. DEFECTIVE INFORMATION
The State charged Haberman with violation of RCW 9A.36.080(1)(c), which is a correct citation to the current codification of the 1993 malicious harassment law.[4] But the charging language of the information and the jury instructions use language from the outdated 1989 malicious harassment law.
Haberman contends that (1) he had a constitutional right to be tried under the law that existed in 1998 at the time of the charged offense; (2) the charging language of the information provides none of the protections required under State v. McCarty, 140 Wash.2d 420, 425, 998 P.2d 296 (2000); and (3) the information "barely contains a suitable charge under former RCW 9A.36.080" (a reference to the 1989 malicious harassment law). We agree.

A. ISSUE INDIRECTLY RAISED FOR FIRST TIME ON APPEAL
Haberman neither challenged the sufficiency of the information at trial nor specifically assigned error to the defective information on appeal. Rather, in his opening brief on appeal, he challenged the trial court's use of outdated statutory language: "The court erred in instructing the jury under former RCW 9A.36.080."[5] Brief of Appellant at 1. And he raised the defective information issue in his Reply Brief, in response to the State's argument that "Appellant was charged under RCW 9A.36.080(1), which the Talley Court found to be constitutional." Brief of Respondent at 12.
"[T]he law of this state has long been that a criminal defendant can raise objections to an information which completely fails to state an offense at any time. Such an objection, which raises a constitutional question, may even be made for the first time on appeal." State v. Holt, 104 Wash.2d 315, 321, 704 P.2d 1189 (1985) (citation omitted, emphasis added). Such is the case here. Therefore, "in order to serve the ends of justice," we address the defective information that Haberman challenges for the first time in his reply brief. RAP 1.2(c); State v. Aho, 137 Wash.2d 736, 740-41, 975 P.2d 512 (1999).

B. UNCONSTITUTIONAL CHARGING UNDER INVALID LAW
U.S. Const. Amend. 6 requires that in "all criminal prosecutions, the accused shall ... be informed of the nature and cause of the accusation...." CONST. ART. I § 22 (amend.10) further states that in "criminal prosecutions the accused shall have the right... to demand the nature and cause of the accusation against him...." McCarty, 140 Wash.2d at 425, 998 P.2d 296. McCarty discussed the standard of review for claims of defective charging documents:
If a charging document is challenged for the first time on review, however, it will be construed liberally and will be found sufficient if the necessary elements appear in any form, or by fair construction may be found, on the face of the document. [State v.] Kjorsvik, 117 Wash.2d [93] 105 [812 P.2d 86 (1991)]. However we note that "`[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a *268 crime, the most liberal reading cannot cure it.'"
Thus reading the information liberally, we employ the Kjorsvik two-prong test: (1) do the necessary elements appear in any form, or by fair construction can they be found, in the information, and if so (2) can the defendant show he or she was actually prejudiced by the inartful language. If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice.
State v. McCarty, 140 Wash.2d at 425, 998 P.2d 296 (citations omitted).
Here, the necessary elements for the crime of malicious harassment do not appear in any form in the information charging Haberman, nor can we find these elements by fair construction. The information filed against Haberman reads as follows:
COMES NOW the Prosecuting Attorney in and for Thurston County, Washington and charges the defendant with the following crime:
MALICIOUS HARASSMENT, RCW 9A.36.080(1)(c)
In that the defendant, CRAIG F. HABERMAN, in the County of Thurston, State of Washington, on or about the 4th day of June, 1998, maliciously and with the intent to intimidate or harass another person because of, or in any way that is reasonably related to, associated with, or directed toward that person's race, color or ancestry, by words or conduct places another person in reasonable fear of harm to his person or property.
Clerk's Papers at 2. The information clearly charged Haberman under a version of the malicious harassment law that had been significantly amended five years before the alleged offense. Charging Haberman with violating an invalid law is a fundamental "due process violation." Aho, 137 Wash.2d at 741, 975 P.2d 512. The courts "have repeatedly and recently held that the remedy for an insufficient charging document is reversal and dismissal of charges without prejudice to the State's ability to refile charges." State v. Vangerpen, 125 Wash.2d 782, 792-93, 888 P.2d 1177 (1995).

III. OUTDATED JURY INSTRUCTIONS
Similarly, the trial court instructed the jury under the outdated version of the law, under which the jury convicted Haberman.
[D]ue process requires that jury instructions define every element of the offense charged, and failure to do so is an error of constitutional magnitude that may be raised for the first time on appeal. State v. Johnson, 100 Wash.2d 607, 623, 674 P.2d 145 (1983), overruled on other grounds by State v. Bergeron, 105 Wash.2d 1, 711 P.2d 1000 (1985); State v. Davis, 27 Wash.App. 498, 506, 618 P.2d 1034 (1980) (`It cannot be said that a defendant had a fair trial... if the jury might assume that an essential element need not be proven.').
City of Seattle v. Norby, 88 Wash.App. 545, 554, 945 P.2d 269 (1997), overruled on other grounds State v. Robbins, 138 Wash.2d 486, 980 P.2d 725 (1999).
In its Comment, the Supreme Court Committee on Jury Instructions notes that "RCW 9A.36.080(1)(c) was amended extensively by 1993 Wa. Laws ch. 127, § 2." 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, Pocket Part at 150 (2d ed. 1998) (WPIC). (Emphasis added). Section 1 now uses different language to define the crime of malicious harassment. Thus, the trial court's malicious harassment jury instructions (previous WPIC 36.01) did not apply to Haberman's post 1993 malicious harassment charge.
The statute has eliminated the phrase "with the intent to intimidate or harass" the victim. Instead, it provides that a person is guilty of malicious harassment if he or she "maliciously and intentionally commits one of the following acts...."
11 WPIC, Pocket Part at 147. We agree with Haberman that the trial court erred in instructing the jury using language from a law that the Supreme Court declared unconstitutional in part in Talley, 122 Wash.2d 192, 858 P.2d 217, and that the Legislature substantially rewrote.
The Supreme Court Committee on Jury Instructions provided further comments concerning the 1993 amendments to the malicious *269 harassment law and its impact on pattern jury instructions. For example,
The provisions of the comparable section of former RCW 9A.36.080, section (1)(b), which set forth specific examples of the words or conduct intended to be included in the offense of malicious harassment committed by placing persons of in fear of harm, have been eliminated from the relevant section of the statute as amended. WPIC 36.03.01 as set forth in the main volume should therefore not be given.

11 WPIC, Pocket Part at 151. (Emphasis added).
The provisions of the comparable section of former RCW 9A.36.080(1)(b), which formed the basis for this instruction as set forth in the main volume, have been eliminated from the relevant section of the statute as amended. WPIC 36.03.02 as set forth in the main volume should therefore not be given.

11 WPIC, Pocket Part at 152 (emphasis added).
Despite these admonitions, the State and the trial court used the outdated jury instructions, even though the instructions no longer fit the statutorily-defined elements of the crime of malicious harassment.
Haberman was entitled to a correct statement of the law. The jury instructions here did not provide a correct statement of the law concerning malicious harassment.[6] The trial court erred in giving jury instructions based on the outdated law.[7] These errors were prejudicial in that they failed to instruct the jury on every element of the crime. Norby, 88 Wash.App. at 557, 945 P.2d 269. A "failure to instruct the jury on every element of the crime requires automatic reversal." Norby, 88 Wash.App. at 557, 945 P.2d 269 (citing State v. Smith, 131 Wash.2d 258, 265-66, 930 P.2d 917 (1997)).[8]
Here, the situation is akin to that in State v. Smith, in that the "to-convict" instruction "states the wrong crime," Smith, 131 Wash.2d at 263, 930 P.2d 917, even though both crimes here happened to have the same title"malicious harassment." Moreover, the situation here is more egregious than that in Smith: Not only did the "to-convict" instruction state the wrong crime, but also it allowed the jury to convict Haberman for conduct that was no longer a crime.
Reversed.
We concur: ARMSTRONG, C.J., QUINN-BRINTNALL, J.
NOTES
[1] Haberman also claims ineffective assistance of counsel and that the court erroneously excluded character testimony and testimony concerning lack of the required mental state. Because we rule favorably on Haberman's primary claims, we do not address these other issues.
[2] According to Ward,

As we exited the front of the store, [Haberman] started coming in with racial slurs, saying I wasn't an American; I was a half-breed, making all kinds of racial epithets toward me and continuing to say he was going to f* *k me up. Telling me I didn't know who my father was or things like that. You know, just rapidly, constantly.
Q. Do you remember any of the specific racial epithets that he said toward you?
A. "Chink" came to mind, "half-breed," .... an a[* *] hole. Slope (sic) even came to mind, chink. Things like that.
Report of Proceedings, September 15, 1998 at 17, 18, 19.
[3] The State charged Haberman using language from the outdated 1989 malicious harassment law (Laws of 1989, ch. 95, § 1); it failed to charge him under the applicable 1993 malicious harassment law (Laws of 1993, ch. 127, § 2). The current malicious harassment law (Laws of 1993, ch. 127, § 2) is codified under RCW 9A.36.080, which is the same codification for the 1989 malicious harassment law (Laws of 1989, ch. 95, § 1).
[4] If the State had cited to the outdated law, the facts the State alleged here would have called for charging Haberman under subsection (1)(b) of RCW 9A.36.
[5] "Because the instructions given to the jury in this case were unconstitutionally overbroad, and did not even reflect the law at the time that Mr. Haberman allegedly committed the charged offense, this court must reverse the conviction." Brief of Appellant at 21 (emphasis added).
[6] The State further fails to address outdated statutory language that the trial court used in Jury Instructions 4, 8, 9 and 11, to which Haberman assigned error.
[7] The jury instructions that were based on the outdated malicious harassment law include: (1) Instruction No. 4, the Malicious Harassment definition; (2) Instruction No. 8, which defines what conduct or words place another person in fear of harm; (3) Instruction No. 9, which lists the elements which must be proved in order to convict Haberman; and (4) Instruction No. 11, which provides that speaking or acting in a critical or insulting manner does not constitute harassment unless the conduct places the victim in reasonable fear of harm.
[8] In Smith, 131 Wash.2d at 258, 930 P.2d 917, the Supreme Court found the "to-convict" instruction to be constitutionally defective "because it purports to be a complete statement of the law yet states the wrong crime as the underlying crime which the conspirators agreed to carry out":

[T]he jury has the right under [State v.]Emmanuel [42 Wash.2d 799, 819, 259 P.2d 845 (1953)] to regard the "to-convict" instruction as a complete statement of the law; when that instruction fails to state the law completely and correctly, a conviction based upon it cannot stand.
Smith, 131 Wash.2d at 262, 930 P.2d 917.