156 P.3d 309 (2007)
STATE of Washington, Respondent,
v.
Curtis WOODS, Appellant.
No. 24910-7-III.
Court of Appeals of Washington, Division 3.
April 24, 2007.
*310 William D. Edelblute, Attorney at Law, Spokane, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Andrew J. Metts III, Spokane County Pros Offc, Spokane, WA, for Respondent.
SCHULTHEIS, A.C.J.
¶ 1 Curtis S. Woods appeals his conviction for third degree assault while armed with a deadly weapon, alleging ineffective assistance of counsel based on a faulty self-defense instruction. Because the jury instruction proposed by defense counsel and given by the court did not accurately state the law and we cannot say the result would have been the same had the correct instruction been given, we reverse.

FACTS
¶ 2 Around 9:00 A.M. on September 11, 2005, Mr. Woods was walking to a senior center for breakfast. As he approached the center, Richard Probert was parking his truck in front of the center. Mr. Woods walked up to Mr. Probert's truck intending to ask for some money he had given to Mr. *311 Probert the night before. As Mr. Woods approached the driver's side of the truck, Mr. Probert ordered him to get away from his truck. Mr. Woods refused to back away and continued to confront Mr. Probert about the money.
¶ 3 At this point, Mr. Woods' and Mr. Probert's stories differ. According to Mr. Woods, Mr. Probert reached for a hammer under the driver's seat, and hit Mr. Woods on the hand with it. Mr. Woods retaliated by jabbing him with a knife. Mr. Woods was later treated for a hand wound.
¶ 4 Mr. Probert testified that when he opened the door to his truck, Mr. Woods came running up, yelling, "Where's my shit?" Report of Proceedings (RP) at 25. According to Mr. Probert, Mr. Woods was angry because he had failed to return his micro-wave. Mr. Probert testified that Mr. Woods was carrying a knife, and refused to put it down. Simply to frighten Mr. Woods, Mr. Probert picked up a hammer from under his seat, and placed it on the passenger seat. Undaunted, Mr. Woods stabbed Mr. Probert in the shoulder, resulting in a wound that required three stitches. Mr. Probert denied threatening or assaulting Mr. Woods.
¶ 5 Two witnesses saw the confrontation, but neither was able to see inside the cab of the truck. Timothy Leu witnessed the altercation from his third floor apartment above the street where Mr. Probert's truck was parked. He testified that he saw a male with a knife arguing with someone inside a pickup truck. He then witnessed the person outside the truck make a "stabbing motion" into the vehicle. RP at 52. Mr. Leu admitted that he was not able to see inside the truck, could not see the driver, and could not provide a complete description of the assailant.
¶ 6 Sterley Palmer told a slightly different version of events. Mr. Palmer testified that he was waiting outside the senior center for breakfast when he saw Mr. Woods standing on the sidewalk near the edge of the street. He saw Mr. Probert advance toward Mr. Woods and watched Mr. Woods back up. Mr. Probert then walked around to the driver's side of his truck and opened the door. When asked to characterize Mr. Woods' demeanor, he answered: "He was definitely in awhat I would call a defensive/offensive pose, ready to either back away or attack." RP at 63.
¶ 7 Next, Mr. Palmer saw Mr. Probert enter his truck and Mr. Woods "raising his hand and bringing it forward." RP at 64. Mr. Palmer heard a yell, and then saw Mr. Probert chasing Mr. Woods with a three- or four-pound hammer. Like Mr. Leu, Mr. Palmer could not see inside the truck and therefore did not witness the circumstances of the assault.
¶ 8 As a result of this incident, the State charged Mr. Woods with one count of third degree assault while armed with a deadly weapon. At trial, defense counsel submitted the general self-defense instruction, which provides that a person may act in self-defense if he reasonably believes he is about to be injured. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 196 (2d. ed. 1994) (WPIC). Trial counsel also proposed WPIC 17.04, at 203, the "act on appearances" instruction, which provides that actual danger is not necessary for self-defense.
¶ 9 The jury found Mr. Woods guilty as charged.

ANALYSIS
¶ 10 On appeal, Mr. Woods challenges the self-defense instruction based on WPIC 17.04 (Instruction 13), claiming defense counsel was ineffective in proposing it. The State responds that the doctrine of invited error precludes his challenge to the instruction.
Standard of Review
¶ 11 "The legal standard we apply to jury instructions is: `Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law.'" State v. Rodriguez, 121 Wash. App. 180, 184-85, 87 P.3d 1201 (2004) (quoting State v. Irons, 101 Wash.App. 544, 549, 4 P.3d 174 (2000)). However, self-defense instructions are subject to heightened appellate scrutiny: "Jury instructions must more than *312 adequately convey the law of self-defense." State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996). "Read as a whole, the jury instructions must make the relevant legal standard manifestly apparent to the average juror." State v. Walden, 131 Wash.2d 469, 473, 932 P.2d 1237 (1997). Further, "[a] jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial." LeFaber, 128 Wash.2d at 900, 913 P.2d 369.
Invited Error
¶ 12 The State contends that the doctrine of invited error precludes Mr. Woods' challenge to the self-defense instructions. This doctrine generally forecloses review of an instructional error, but does not bar review of a claim of ineffective assistance of counsel based on such instruction. State v. Studd, 137 Wash.2d 533, 551, 973 P.2d 1049 (1999); see also State v. Aho, 137 Wash.2d 736, 745, 975 P.2d 512 (1999) (review of instructional error "is not precluded where invited error is the result of ineffectiveness of counsel"). Thus, we address the instructions in the context of ineffectiveness of counsel.
Ineffective Assistance
¶ 13 Mr. Woods had the right to effective assistance of counsel at trial. U.S. Const. amend. VI; WASH. CONST. art. I, § 22. We start with the presumption that counsel's representation was effective. Studd, 137 Wash.2d at 551, 973 P.2d 1049. In order to find that trial counsel was ineffective, the defendant must show that counsel's performance was deficient in some respect, and that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995). The defendant must also demonstrate the absence of legitimate strategic or tactical reasons for the challenged conduct. McFarland, 127 Wash.2d at 336, 899 P.2d 1251.
¶ 14 Deficient performance is performance "`below an objective standard of reasonableness based on consideration of all the circumstances.'" Studd, 137 Wash.2d at 551, 973 P.2d 1049 (quoting McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251). Reasonable attorney conduct includes a duty to investigate the relevant law. State v. Jury, 19 Wash.App. 256, 263, 576 P.2d 1302 (1978); Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052. Proposing a detrimental instruction, even when it is a WPIC, may constitute ineffective assistance of counsel. See Aho, 137 Wash.2d at 745-46, 975 P.2d 512 (counsel ineffective for offering instruction that allowed client to be convicted under a statute that did not apply to his conduct).
¶ 15 The prejudice prong of the test requires the defendant to prove there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. State v. Leavitt, 111 Wash.2d 66, 72, 758 P.2d 982 (1988) (adopting test from Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
Standard for Self-Defense
¶ 16 Due process requires the State to prove every element of the crime charged beyond a reasonable doubt. U.S. Const. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); City of Seattle v. Norby, 88 Wash.App. 545, 554, 945 P.2d 269 (1997). Where the issue of self-defense is raised, the absence of self-defense becomes another element of the offense, which the State must prove beyond a reasonable doubt. State v. Acosta, 101 Wash.2d 612, 615-16, 683 P.2d 1069 (1984).
¶ 17 "[E]vidence of self-defense must be assessed from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees." State v. Janes, 121 Wash.2d 220, 238, 850 P.2d 495 (1993). Courts must inform the jury that the self-defense standard incorporates both objective and subjective elements: the subjective portion requires the jury to stand in the defendant's shoes and consider all the facts and circumstances known to the defendant, while the objective portion requires the jury to determine what a reasonably prudent person similarly situated would do. Id.; Walden, 131 Wash.2d at 474, 932 P.2d 1237.
*313 ¶ 18 "A jury may find self-defense on the basis of the defendant's subjective, reasonable belief of imminent harm from the victim." LeFaber, 128 Wash.2d at 899, 913 P.2d 369 (citing Janes, 121 Wash.2d at 238-39, 850 P.2d 495). Given this subjective component, the jury need not find actual imminent harm. Id. (citing State v. Theroff, 95 Wash.2d 385, 390, 622 P.2d 1240 (1980)).
¶ 19 Once a defendant produces some evidence of self-defense, the burden shifts to the prosecution to prove the absence of self-defense beyond a reasonable doubt. See Acosta, 101 Wash.2d at 615-16, 683 P.2d 1069 (self-defense rebuts the "unlawful" element of assault); see also State v. Dyson, 90 Wash.App. 433, 438, 952 P.2d 1097 (1997) ("because a person who acts in self-defense is not `fail[ing] to be aware of a substantial risk that a wrongful act' may occur, self-defense negates the requirement of a `wrongful act'") (alteration in original) (citation omitted) (quoting RCW 9A.08.010(1)(d)). Where the State is relieved from proving the absence of self-defense, an error of constitutional magnitude results, which may be raised for the first time on appeal. Walden, 131 Wash.2d at 473, 932 P.2d 1237.
¶ 20 RCW 9A.16.020(3) sets out the parameters of self-defense in Washington. The statute states that the use of force is lawful when "used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her person."
The Self-Defense Instructions
¶ 21 The jury was correctly instructed that Mr. Woods was entitled to use force to defend himself if he reasonably believed he was about to be injured. RCW 9A.16.020(3); State v. Bland, 128 Wash.App. 511, 116 P.3d 428 (2005). Instruction 12, based on WPIC 17.02, stated:
It is a defense to a charge of third degree assault that the force used was lawful as defined in the instruction.
The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent and when the force is not more than is necessary.
The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.
The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.
Clerk's Papers (CP) at 22.
¶ 22 Unfortunately, the jurors were also given instruction 13, based on WPIC 17.04, which stated:
A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.
CP at 23 (emphasis added).
¶ 23 Mr. Woods correctly contends that instruction 13 exceeded the bounds of the law in requiring the jury to find that he believed he was in actual danger of great bodily harm. Instruction 13 is inconsistent with instruction 12, and it is an erroneous statement of the law of self-defense. Even in homicide cases, the defendant does not have to establish that he reasonably feared great bodily harm. See, e.g., Walden, 131 Wash.2d at 475 n. 3, 932 P.2d 1237 (the instruction defining justifiable homicide as well as the "act on appearances instruction" must use the term "great personal injury" and not "great bodily harm").
¶ 24 This distinction is meaningful. "Great personal injury is an injury that would produce severe pain and suffering"; whereas "great bodily harm is injury creating probability of death or causing significant serious permanent disfigurement, or creating significant *314 permanent loss or impairment of the function of a bodily part or organ." State v. Freeburg, 105 Wash.App. 492, 504, 20 P.3d 984 (2001). Because great bodily harm is an injury far more severe than great personal injury, the Freeburg court held it "imperative" that trial courts use the correct language. Id. at 507, 20 P.3d 984; see also State v. Corn, 95 Wash.App. 41, 975 P.2d 520 (1999) (great bodily harm instruction not harmless).
¶ 25 But a more significant problem here is that WPIC 17.04 sets out the standard for self-defensealbeit incorrectlyapplicable in deadly force cases. As set forth above, in cases not involving death, the use of force is justified if the defendant reasonably believed he was about to be injured. Instruction 13 wrongly instructed the jury that the type of injury Mr. Woods had to fear in order to defend himself was one involving great bodily harm. If the distinction between great bodily harm and great personal injury is significant, the distinction between great bodily harm and mere injury is even more so.
¶ 26 State v. L.B., 132 Wash.App. 948, 135 P.3d 508 (2006) supports our position. L.B. involved a juvenile charged with fourth degree assault. Before issuing its ruling, the trial court noted that WPIC 17.04 permits a defendant to act in self-defense if he had a reasonable belief he was in danger of great bodily harm. Id. at 951, 135 P.3d 508. Division One of this court ruled that WPIC 17.04 was not an accurate statement of the law, explaining:
According to the plain language of RCW 9A.16.020(3), a person has a right to use force to defend himself against danger of injury, "in case the force is not more than is necessary." The term "great bodily harm" places too high of a standard for one who tries to defend himself against a danger less than great bodily harm but that still threatens injury. Where the defendant raises a defense of self-defense for use of nondeadly force, WPIC 17.04 is not an accurate statement of the law because it impermissibly restricts the jury from considering whether the defendant reasonably believed the battery at issue would result in mere injury.
Id. at 953, 135 P.3d 508 (emphasis added).
¶ 27 In light of Walden, Freeburg, and L.B., there was no strategic or tactical reason for counsel's proposal of an instruction that incorrectly stated the law. The instruction eased the State of its proper burden of proof on self-defense, and Mr. Woods was prejudiced because the jury may have applied the more stringent "actual danger of bodily harm" language rather than the accurate "reasonably believes he is about to be injured" language.
¶ 28 The State contends any error was harmless because "great bodily harm" was not defined for the jury. Because prejudice is presumed when an instruction misstates the law, a defendant is entitled to a new trial unless the error can be declared harmless beyond a reasonable doubt. State v. Caldwell, 94 Wash.2d 614, 618, 618 P.2d 508 (1980). An instructional error is harmless only if it is "`trivial, or formal, or merely academic'" and "`in no way affected the final outcome of the case.'" Walden, 131 Wash.2d at 478, 932 P.2d 1237 (emphasis omitted) (internal quotation marks omitted) (quoting State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977)).
¶ 29 Mr. Woods' defense was that Mr. Probert was the initial aggressor, hitting him with a three- to four-pound hammer. The defense's theory was supported by Mr. Palmer's testimony that Mr. Probert was the first to advance, and that Mr. Woods reacted by backing off. And even Mr. Probert admitted that he reached for a hammer intending to frighten Mr. Woods. Thus, the jury could have found that Mr. Woods reasonably believed that Mr. Probert was going to injure him, even if he did not expect great bodily harm.

CONCLUSION
¶ 30 We conclude that instruction 13 precluded consideration of Mr. Woods' self-defense claim. And because we cannot say the outcome of the trial would have been the *315 same with proper self-defense instructions, we reverse.
WE CONCUR: KULIK, J., and KATO, J. Pro Tem.